**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ROSS UNIVERSITY SCHOOL OF MEDICINE and GLOBAL EDUCATION INTERNATIONAL, INC.,<br><br>     Plaintiffs,<br><br>   v.<br><br>BEHZAD AMINI, WWW.ROSSU.NET, WWW.ROSSMEDICALSCHOOL.ORG, WWW.ROSSMEDSCHOOL.COM and WWW.JOHNDOEROSSINFRINGINGSITES1-20.DOE<br><br>     Defendants. | Civil Action No.3:13-cv-06121-AET-TJB |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION**

EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 642-1900
Facsimile:  (973) 642-0099
Attorneys for Plaintiffs
Ross University School of Medicine and
Global Education International, Inc.

FIRM:24052371v1

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................4

POINT I.     PLAINTIFFS' HAVE DEMONSTRATED A
LIKELIHOOD OF SUCCESS ON THE MERITS ...................................................4

     A.     Breach of Contract Claim ............................................................ 4

     B.     Anticybersquatting Claim ............................................................ 5

     C.     Trademark Claims........................................................................ 6

     D.     Amini's Reliance Upon the First Amendment Is Grossly Misplaced ........ 7

          1. Amini Freely Contracted as to What He Could Say ............................. 7

          2. Amini Has No Constitutional Right to Confuse and Mislead................ 9

POINT II.     PLAINTIFFS FACE IRREPARABLE HARM ABSENT
PRELIMINARY INJUNCTIVE RELIEF ...............................................................13

POINT III.     COMPELLING PUBLIC POLICIES FAVOR  THE
ENTRY OF A PRELIMINARY INJUNCTION ...................................................14

CONCLUSION...........................................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACLU of Georgia v. Miller*,
   997 F. Supp. 1228 (N.D. Ga. 1997) .................................................................................6

*Bally Total Fitness Holding Corp. v. Faber*,
   29 F. Supp. 2d 1161 (C.D. Cal. 1998) .............................................................................5

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) .........................................................................................................8

*Brookfield Communications v. West Coast Entertainment Corp.,*,
   174 F.3d 1036 (9th Cir. 1999) .......................................................................................10

*Checkpoint Systems v. Check Point Software Tech.*,
   269 F.3d 270 (3d Cir. 2001) ..........................................................................................11

*Cohen v. Cowles Media Co.*,
   501 U.S. 663 (1991) .........................................................................................................8

*DC Comics, Inc. v. Reel Fantasy, Inc.*
   696 F.2d 24 (2d Cir. 1982) ..............................................................................................1

*Democratic National Committee v. Republican National Committee*,
   673 F.3d 192 (3d Cir. 2012), *cert denied,* 133 S. Ct. 931 (2013) ...............................8

*Jews for Jesus v. Brodsky*,
   993 F. Supp. 282 (D.N.J.), *aff'd,* 159 F.3d 1351 (1998).................................11, 12, 13

*Lucas Nursery & Landscaping Inc. v. Grosse*,
   359 F.3d 806 (6th Cir. 2004) ...........................................................................................5

*Model-ETTS Corp. v. Merck & Co.,*
   118 F. Supp. 259 (S.D.N.Y. 1953) ..................................................................................1

*Morrison & Foerster LLP v. Wick*,
   94 F.Supp. 2d 1125 (D. Colo. 2000)...........................................................................9, 10

*Mt. Hope Development Associates v. Mt. Hope Waterpower Project, L.P.,*
   154 N.J. 141 (1998) ..........................................................................................................8

*OBH, Inc. v. Spotlight Magazine, Inc.*,
   86 F. Supp. 2d 176 (W.D.N.Y. 2000) .............................................................................9

FIRM:24052371v1

*Planned Parenthood Federation of America v. Bucci*,
  1997 U.S. Dist. LEXIS 3338 (S.D.N.Y. Mar. 24, 1997), *aff'd*, 1998 U. S. App.
  LEXIS 22179 (2d Cir. Feb. 9, 1998) ..........................................................................9

*Taubman Co. v. Webfeats*,
  319 F.3d 770 (6th Cir. 2003) .....................................................................................5

*Times Mirror Magazines, Inc. v. Las Vegas Sports News*,
  212 F.3d 157 (3d Cir. 2000), *cert denied,* 531 U.S. 1071 (2001)...........................14

*TMI, Inc. v. Maxwell*,
  368 F.3d 433 (5th Cir. 2004) .....................................................................................5

*United Egg Producers v. Standard Brands, Inc.*,
  44 F.3d 940 (11th Cir. 1995) .....................................................................................8

*USA Technologies, Inc. v. Tirpak*,
  2012 U.S. Dist. LEXIS 72318 (E.D. Pa. May 24, 2012) ...........................................8

*Virtual Works, Inc. v. Volkswagen of America, Inc.*
  238 F. 3d 264 (4th Cir. 2001) ....................................................................................5

*Yankee Publishing, Inc. v. News America Publishing, Inc.*,
  809 F. Supp. 267 (S.D.N.Y. 1992) .........................................................................7, 9

iii

## PRELIMINARY STATEMENT[1]

Plaintiffs Ross University School of Medicine ("RUSM") and Global Education International, Inc. ("Global Education International") respectfully submit this reply memorandum of law in further support of their application for a preliminary injunction against defendants Behzad Amini, www.RossU.net, www.RossMedicalSchool.org, www.RossMedSchool.com and www.JohnDoeRossInfringingSites1-20.doe.[2]

Amini's unsworn and unverified opposition amounts to nothing more than a stream of irrelevancies, admissions, concessions and bald misrepresentations that bolster rather than undermine plaintiffs' application.[3]  There, Amini:

- admits that he signed the Settlement Agreement containing a comprehensive non-disparagement provision;

- admits that at all times relevant to the Settlement Agreement he was represented by two attorneys, and seemingly had ongoing access to the advice and counsel of a third attorney -- his ex-wife;

- concedes that he has made the disparaging comments attributed to him in the Verified Complaint;

- never disputes that he has established and controls www.RossU.net, www.RossMedicalSchool.org and www.RossMedSchool.com and the network of additional bogus Ross University websites of which he has boasted;

---

[1] Defined terms used herein shall have the same meaning as in plaintiffs' opening brief.

[2] Plaintiffs have identified one of the JohnDoe websites -- www.RossUniversity.info.  *See* Reply Certification of James P. Flynn, ¶ 4.

[3] Amini has submitted neither sworn statements nor statements pursuant to 28 U.S.C. §1746.  Courts should disregard unsworn, unverified statements in considering applications for injunctive relief in a trademark case.  *DC Comics, Inc. v. Reel Fantasy, Inc.* 696 F.2d 24, 27 (2d Cir. 1982) (finding in trademark case that defendant's "unsworn affirmations prove nothing"); *Model-ETTS Corp. v. Merck & Co.,* 118 F. Supp. 259, 261 (S.D.N.Y. 1953) (refusing to rely on unsworn, unverified statements at preliminary injunction hearing).

FIRM:24052371v1

- nowhere denies that the domain names of the Offending, Infringing Sites are, by design, confusingly similar to the legitimate Ross University Websites and plaintiffs' trademarks;

- flatly misrepresents to the Court that the first pages of his Offending, Infringing Sites contain a disclaimer that would prevent any confusion between his bogus sites and the Ross University Websites;

- does not dispute that he sent the emails or created the bogus Ross University YouTube account referenced in the Verified Complaint;

- never disputes that he has used the Ross University Marks on the Offending, Infringing Sites and within the domain names themselves;

- concedes, as he must, that plaintiffs have properly registered the Ross University Marks, as well as numerous domain names incorporating those marks;

- does not dispute that the Ross University Marks are famous marks that have an inherent or acquired distinctiveness;

- does not challenge the assertion that he has expressly stated his intention to divert, through the Offending, Infringing Sites, prospective RUSM students from legitimate Ross University Websites; and

- does not deny that no part of his name is referenced in the domain names of the Offending, Infringing Sites and that, in fact, he registered those domain names in a manner intended to disguise his involvement.

In short, Amini has marshaled no facts or authorities sufficient to rebut the

conclusion that in clear violation of federal and state laws, as well as his contractual obligations,

he has established a network of bogus websites specifically designed to inflict grave and lasting

injury upon RUSM. Instead, Amini attempts to wrap himself in the mantle of the First

Amendment in a desperate attempt to avoid the consequences of his malicious campaign to

2

undermine RUSM's educational and financial operations.  As demonstrated below at pages 7-13, the First Amendment affords Amini absolutely no cover here.

The First Amendment certainly does not shield Amini from liability for breaching the non-disparagement clause of the Settlement Agreement.  He cites not a single case in which the First Amendment was successfully invoked as a defense to the breach of a non-disparagement provision.  There is no such authority.  Amini freely agreed to refrain from making disparaging remarks about RUSM.  He did so on the advice of counsel and in exchange for the opportunity to withdraw voluntarily from RUSM rather than attempt to defend himself against a serious grievance filed by a fellow student.  Allowing Amini now to invoke the First Amendment to avoid the bargained-for non-disparagement provision would result in a fundamental rewriting (if not wholesale gutting) of the parties' agreement when there is no basis whatsoever in law, equity or common sense for doing so.

Nor does the First Amendment provide a defense to Amini's violation of the Anticybersquatting Act or plaintiffs' trademark claims.  Amini cites no authority and there is no authority for the position that the First Amendment permits him to use in the domain names of the multiple Offending, Infringing Sites words and phrases that are confusingly similar to those reflected in the domain names of the legitimate Ross University Websites.  Absent the controlling non-disparagement provision, Amini's free speech rights might extend to the contents of a single Offending, Infringing Site.  The First Amendment, however, simply has nothing whatsoever to do with the intentionally confusing domain names Amini has selected for his network of bogus websites.  Amini shamefully attempts to mislead the Court by representing that the "disclaimer" included in his sham websites is sufficient to avoid confusion.  This contention,

3

which has no legal basis, is disposed of factually in the accompanying Reply Certification of James P. Flynn, Esq.

Plaintiffs respectfully submit that the record compels the conclusion that injunctive relief is warranted here given the nature of Amini's conduct, the extraordinary harm RUSM will suffer if injunctive relief is denied and the strong public policy favoring the enforcement of settlement agreements and the avoidance of precisely the kind of public confusion Amini admittedly has attempted to generate here.

## ARGUMENT

### POINT I.

### PLAINTIFFS' HAVE DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS

A.      **Breach of Contract Claim**

Amini's conclusory and unsworn assertion that he somehow was fraudulently induced into executing the Settlement Agreement fails the straight-face test.  It is plainly inadequate to defeat the breach of contract claim.  Amini's contention that he entered into the Settlement Agreement under duress is also preposterous.  Amini admittedly was represented by two attorneys at the time the Settlement Agreement was negotiated and executed.  *See* Amini's Brief at p. 8.  Further, throughout that time Amini appears to have had ongoing access to the advice and counsel of a third attorney, his ex-wife.  *Id.* at pp. 6-7.  There was no fraud or duress here.  In the Settlement Agreement, Amini confirmed that he "executed it without duress or coercion, and have done so with the full advice of counsel." *See* Settlement Agreement, § 4.11.  He further confirmed that, in entering into that contract, he did not "rel[y] in any way on any representation, warranty, statement of fact or opinion, disclosure or non-disclosure not set forth herein[.]" *Id.*  At page 2 of the Settlement Agreement, Amini also confirmed the "receipt and

4

sufficiency" of "good and valuable consideration[.]"  Given the plain language of the Settlement

Agreement and Amini's inability to deny that he made the disparaging comments attributed to

him at paragraphs 63-88 of the Verified Complaint, plaintiffs plainly have demonstrated a

likelihood of success on the merits of the breach of contract claim in Count I.

> **B.**      **Anticybersquatting Claim**

Amini largely ignores the factors relevant to determining whether he chose the

domain names of the Offending, Infringing Sites with the bad faith intent necessary to sustain a

claim under the Anticybersquatting Act.  *See* Plaintiffs' Opening Brief at 17-18.  Instead, Amini

predictably -- and futilely -- focuses principally on just one of those nine factors.  Amini

maintains that the Offending, Infringing Sites constitute non-commercial activity and therefore

fall beyond the reach of the Anticybersquatting Act.  He is wrong.[4]

The litany of cases Amini cites at pages 16-19 of his brief do nothing to support

his position.  In fact, of those nine cases, only *TMI, Inc. v. Maxwell*, 368 F.3d 433 (5th Cir.

2004), *Lucas Nursery & Landscaping Inc. v. Grosse*, 359 F.3d 806 (6th Cir. 2004); *Taubman Co.

v. Webfeats*, 319 F.3d 770 (6th Cir. 2003) and *Bally Total Fitness Holding Corp. v. Faber*, 29 F.

Supp. 2d 1161, 1167 (C.D. Cal. 1998), discuss Internet domain names in the context of the

Lanham Act.  And of those four cases, only three -- *TMI*, *Lucas Nursery* and *Taubman* -- address

---

[4] Amini does not challenge plaintiffs' contention that at least seven of the nine bad faith factors are satisfied here. He ignores plaintiffs' analysis at his own peril.  A defendant "who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from the Act's safe harbor provision." *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 270 (4th Cir. 2001) (affirming injunction under Anticybersquatting Act). As the Fourth Circuit reasoned:

> we decline to construe the safe harbor so broadly as to undermine the rest of the
> statute.  All but the most blatant cybersquatters will be able to put forth at least
> some lawful motives for their behavior.  To hold that all such individuals may
> qualify for the safe harbor would frustrate Congress' purpose by artificially
> limiting the statute's reach.  We do not think Congress intended the safe harbor
> to protect defendants operating, at least in part, with unlawful intent.

*Id.*

FIRM:24052371v1

the Anticybersquatting Act.  *ACLU of Georgia v. Miller*, 997 F. Supp. 1228 (N.D. Ga. 1997), deals with the application of a totally unrelated Georgia statute.  The remaining cases do not deal with Internet domain names.  Their holdings have absolutely no application to the issues presented on this application.

Amini relies upon *TMI,  Lucas Nursery, Taubman*[5] and *Bally Total Fitness* for the proposition that his websites are cyber "gripe sites" that should be protected as non-commercial activity.  Conveniently, Amini fails to mention that each of those cases involved a <u>single</u> website that was geared towards consumer criticism.  The case now before this Court, however, plainly is <u>not</u> of the single website variety.  As discussed in plaintiffs' opening brief at pages 18-20, courts consistently have noted that the collection and hoarding of multiple confusingly-similar domain names cuts against the contention that a defendant was merely using the domain names as a forum to express consumer criticism.  Rather, courts routinely find a bad faith intent where, as here, an individual purchases multiple domain names with the purpose of causing consumer confusion and trademark disparagement and dilution.  This is exactly Amini's goal with his admitted registration of some <u>twenty</u> infringing domain names.  Under these circumstances, plaintiffs have established a likelihood of success on the cybersquatting claim in Count II.

### C.    Trademark Claims

Amini argues that the trademark claims in Counts III and IV are defective "because Mr. Amini's web site consists of protected speech relating to" RUSM.  *See* Amini's Brief at p. 12.  Trademark law, according to Amini, "does not prevent consumers . . . from criticizing corporations and from using a company's trademarked names to identify the

---

[5] In *Taubman*, plaintiff commenced the action alleging that defendant operated and controlled a single infringing website.  During the course of the litigation, defendant registered five non-infringing websites.

FIRM:24052371v1

corporation who they are criticizing." *Id.*  Here, Amini misstates the law and fundamentally

misconstrues the nature of plaintiffs' trademark infringement and dilution claims.

Plaintiffs' trademark claims are based on Amini's unadorned use of the plaintiffs'

trademarks or confusingly similar terms as domain names identifying -- or, rather, confusingly

<u>misidentifying</u> -- the Internet source of his vitriol.  Trademark law very specifically precludes

that, as seen in *Yankee Publishing, Inc. v. News America Publishing., Inc.,* 809 F. Supp. 267,

275-76 (S.D.N.Y. 1992), where the court stated that trademark will generally trump a First

Amendment claim "[w]hen another's trademark (or confusingly similar mark) is used without

permission *for the purpose of source identification.*"  Whatever merits Amini's "nominative use"

argument might have had in the absence of the Settlement Agreement's non-disparagement

clause and if he was complaining about RUSM on a non-infringing website, that argument has

no merit here because he is blatantly infringing the plaintiffs' marks through the domain names.

It is the <u>domain</u> <u>names</u> <u>themselves</u> that infringe.

**D.** **<u>Amini's Reliance Upon the First Amendment Is Grossly Misplaced</u>**

**1.** **<u>Amini Freely Contracted as to What He Could Say</u>**

Amini's "constitutional" arguments are entirely without merit.  As a preliminary

matter, Amini's reference to "prior restraints" is nonsense.  The Court is not being asked to

impose prior restraints on Amini's free speech.  Amini himself already has agreed to certain

restrictions on what he can and cannot say about RUSM.  In other words, any restraints upon

Amini have been freely <u>self</u>-<u>imposed</u>.  The Court is merely being asked to enforce the

contractual non-disparagement obligation by which Amini, upon the advice of counsel and for

valid consideration, agreed to refrain from certain speech.

The First Amendment, and related state constitutional provisions,  have no

bearing on plaintiffs' breach of contract claim.  It is well settled that the protection provided by

7

the First Amendment only applies to state action. Where a court is merely enforcing the terms of a contract explicitly agreed to by the parties there is no state action. *See Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 204 (3d Cir. 2012) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982)), *cert. denied,* 133 S. Ct. 931 (2013); *USA Techs., Inc. v. Tirpak,* 2012 U.S. Dist. LEXIS 72318, at *23-25 (E.D. Pa. May 24, 2012); *see also United Egg Producers v. Standard Brands, Inc.*, 44 F.3d 940, 943 (11th Cir. 1995). Stated simply, judicial enforcement of a settlement agreement will not constitute state action unless the court restrains speech that falls outside the scope of the agreement. *See USA Technologies,* 2012 U.S. Dist. LEXIS 72318, at *25 (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668 (1991)) Here, even a cursory review of Amini's bogus websites reveals that his words and actions fall squarely within the scope of the Settlement Agreement's non-disparagement clause.

Even if the Court were to find that the enforcement of the Settlement Agreement constitutes state action or conclude that state action is not essential to Amini's constitutional arguments, those arguments are still unavailing. The fact remains that Amini has knowingly waived any rights he had under the First Amendment and related state constitutional provisions in this context. It is well settled that a party can contractually waive constitutional protections if the waiver was made knowingly and voluntarily. *See Democratic Nat'l Comm.,* 673 F.3d at 205; *Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P.,* 154 N.J. 141, 147 (1998) (relying on "the general rule permitting waiver of constitutional rights."). Indicia of a knowing and voluntary waiver include whether the waiving party was represented by counsel and whether the party received adequate consideration for the waiver. *See Democratic Nat'l Committee,* 673 F.3d at 205; *Mt. Hope Dev. Assoc.,* 154 N.J. at 147 (agreement to waive a constitutional right must be clear and supported by sufficient consideration). Amini admits that he was represented

8

by two and perhaps three attorneys at the relevant time. *See* Amini's Brief at pp. 6-8. Moreover, in executing the Settlement Agreement, he expressly acknowledged the absence of duress or coercion. *See* Settlement Agreement, § 4.11. Amini also expressly acknowledged that he received good and valuable consideration when entering into the Settlement Agreement. *Id.* at p. 2. This consideration included RUSM's agreement to permit Amini to voluntarily withdraw from RUSM. Moreover, with a negotiated and quite generous reference letter from RUSM in hand, Amini was free to apply to other schools and continue his medical education. *Id.*, §§ 3.1-3.2, Exhibit A.

### 2.    Amini Has No Constitutional Right to Confuse and Mislead

Amini's constitutional arguments also are unavailing with respect to the anticybersquatting claim. The courts have held that the First Amendment provides no protection where, as here, the purpose of a chosen domain name is to confuse and deceive Internet users into believing they are accessing a particular plaintiff's site. *See OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176, 197 (W.D.N.Y. 2000) ("Use of another's trademark is entitled to First Amendment protection only when the use of that mark is part of a communicative message, not when it is used merely to identify the source of a product"); *Morrison & Foerster LLP v. Wick*, 94 F. Supp. 2d 1125, 1135 (D. Colo. 2000) (defendant's only purpose in choosing domain name was to deceive people into believing they were accessing plaintiff's actual website – defendant's domain names did not contain any communicative message); *Planned Parenthood Fed'n of Am. v. Bucci*, 1997 U.S. Dist. LEXIS 3338, at **35-36 (S.D.N.Y. Mar. 24, 1997) (defendant's use of the domain name "plannedparenthood.com" to identify his website acted as a "source identifier" rather than a communicative message and therefore was not entitled to First Amendment protection), a*ff'd,*1998 U.S. App. LEXIS 22179 (2d Cir. Feb. 9, 1998); *Yankee Publ'g,* 809 F. Supp. at 275-76 ("When another's trademark (or a

9

confusingly similar mark) is used without permission *for the purpose of source identification,* the trademark law generally prevails over the First Amendment") (emphasis in original).  Here, Amini cannot credibly argue that his domain names www.RossU.net, www.RossMedicalSchool.org, www.RossUniversity.info and  www.RossMedSchool.com are not source identifiers designed to deceive Internet users that they are accessing one of the Ross University Websites.  The domain names do not constitute any communicative message and therefore are not protected under the First Amendment.

Amini's constitutional defenses are equally unavailing with respect to plaintiffs' trademark dilution and infringement  claims.  Although Amini maintains that his websites are being used for protectable non-commercial purposes, his words and actions prove otherwise. Indeed, Amini has admitted to controlling some 20 different websites all containing the Ross University Marks.  The only possible rationale for owning and operating that magnitude of websites incorporating the Ross University Marks is to inflict consumer confusion.  Such deceitful use is not protected by the First Amendment.  *See, e.g., Morrison & Foerster*, 94 F. Supp. 2d at 1135.

Amini's invocation of the phrase "nominative fair use" does nothing to detract from the strength of plaintiffs' cybersquatting, infringement or dilution claim.  In assessing those claims, the Court need not consider how Amini refers to RUSM in the prose content of the Offending, Infringing Websites.  Amini's nominative fair use authorities would be relevant only if plaintiffs' claims turned on the issue of whether Amini's disparaging comments on the website regarding RUSM constitute an infringing use of plaintiffs' trademarks.  These claims, however, are not pegged to that issue.  As in in *Brookfield Communications v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1065 (9th Cir. 1999), plaintiffs concede that the "fair use doctrine applies

10

in cyberspace as it does in the real world." But, just as in *Brookfield*, the record here demonstrates that Amini is using plaintiffs' trademarks as his <u>domain</u> <u>names</u> "to attract people to [his] web site[s]," and "[t]hat is not fair use." *Id.* at 1066. And further, as has already been held in this district, "'[d]ue to the nature of Internet use, defendant's appropriation of plaintiff's mark as a domain name and home page address cannot adequately be remedied by a disclaimer.'" *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 303 (D.N.J.) (quoting *Planned Parenthood*, 1997 U.S. Dist. LEXIS 3330, at *39), *aff'd*, 159 F.3d 1351 (3d Cir. 1998).

        The fact that those arriving at one of Amini's bogus sites will realize, perhaps even quickly, that it is not a site sponsored by RUSM is irrelevant. The Third Circuit has held that trademark infringement "'can be based upon confusion that creates initial customer interest, even though no actual sale is finally completed as a result of the confusion.'" *Checkpoint Systems v. Check Point Software Tech.*, 269 F.3d 270, 292 (3d Cir. 2001) (citation omitted) ("Several courts of appeals have found initial interest confusion and post-sale confusion actionable under the Lanham Act. We agree and hold initial interest confusion is actionable under the Lanham Act.") Initial interest confusion "occurs when a consumer is lured to a product by its similarity to a known mark, even though the consumer realizes the true identity and origin of the product before consummating a purchase." *Id.* at 294 (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000)). Without protection against initial interest confusion, an infringer receives a "free ride on the good will of the established mark." *Id.* at 295 (internal citations omitted). Indeed, confining actionable confusion under the Lanham Act to only confusion still present when one was leaving the infringing website "would undervalue the importance of a company's goodwill with its customers." *Id*.

11

FIRM:24052371v1

The law in this district long has been that such use of another's mark as a domain name is not fair use but, to the contrary, constitutes commercially enjoinable speech that infringes and dilutes the trademark owner's rights.  As seen in *Jews for Jesus*, 993 F. Supp. 282, upon which plaintiffs relied heavily in their opening brief and which Amini wholly ignores, the Court stated:

> [D]efendant has appropriated plaintiff's mark in order to reach an audience of Internet users who want to reach plaintiff's services and viewpoint, intercepting them and misleading them in an attempt to offer his own political message. Second, defendant's appropriation not only provides Internet users with competing and directly opposing information, but also prevents those users from reaching plaintiff and its services and message. *In that way, defendant's use is classically competitive: he has taken plaintiff's mark as his own in order to purvey his Internet services — his web site — to an audience intending to access plaintiff's services.*
>
> In this case, the Defendant has done more than merely register a domain name. He has created, in his words, a "bogus `Jews for Jesus´" site intended to intercept, through the use of deceit and trickery, the audience sought by the Plaintiff Organization.[6] Moreover, the Defendant Internet site uses the Mark and the Name of the Plaintiff Organization as its address, conveying the impression to Internet users that the Plaintiff Organization is the sponsor of the Defendant Internet site[7]. . . .
>
> The conduct of the Defendant also constitutes a commercial use of the Mark and the Name of the Plaintiff Organization because it is designed to harm the Plaintiff Organization commercially by disparaging it and preventing the Plaintiff

---

[6] In this case, Amini has expressly stated that he wants search engines on the Internet to have his confusingly named websites appear in search results right next to the domain names of the legitimate Ross University Websites.  *See* Verified Complaint, ¶ 102, Exhibit D ("many of my websites against Ross University will hit the web, **in all the top search engines, parked next to Ross University!**") (emphasis supplied).

[7] The unadorned domain names chosen by Amini are www.RossU.net, www.RossMedicalSchool.org, www.RossMedSchool.com, and www.rossu.info, which mirror plaintiffs' websites www.RossU.edu, www.RossMed.edu and www.RossUniversity.net, and plaintiffs' "Ross University" marks. *See* Verified Complaint, ¶¶ 5, 7, 49-57.

12

> Organization from exploiting the Mark and the Name of the
> Plaintiff Organization.  In addition, the Defendant Internet
> site has and will continue to inhibit the efforts of Internet
> users to locate the Plaintiff Organization Internet site.[8]
>
> The Plaintiff Organization has demonstrated a likelihood of
> success on its claim of dilution under Section 1125(c).

*Id*. at 308 (internal quotations and citations omitted; emphasis in original).  Plaintiffs quote *Jews for Jesus* at length here because the similarities between that case and this one are readily apparent and demand the same result.

## POINT II.

### PLAINTIFFS FACE IRREPARABLE HARM
### ABSENT PRELIMINARY INJUNCTIVE RELIEF

Not surprisingly, Amini is unable to articulate any undue harm he will sustain if preliminary injunctive relief is granted.  At best, he appears to suggest that injunctive relief will unfairly strip him of his First Amendment rights.  *See* Amini's Brief at p. 30.  This is no injury at all because, as demonstrated above at pages 7-13, Amini's First Amendment rights are not implicated here.

In stark contrast, plaintiffs face grave injury if injunctive relief is denied.  *See* Plaintiffs' Opening Brief at 23-24.  If Amini is permitted to resume his cyber-campaign to undermine RUSM's educational and financial programs, prospective students and other persons seeking accurate information from a legitimate RUSM source will be frustrated in those efforts. Untold numbers of prospective students could be discouraged from applying or enrolling at RUSM.  Amini will be placed back in a position of depriving RUSM of full control over its marks, reputation and good standing.  The Third Circuit has expressly held that a lack of control

---

[8] *See* Verified Complaint, ¶¶ 99-102; *cf. Jews for Jesus,* 993 F. Supp. at 304 ("In addition, considering the vastness of the Internet and its relatively recent availability to the general public, many Internet users are not sophisticated enough to distinguish between the subtle difference in the domain names of the parties.")

13

over the use of one's own mark amounts to irreparable harm.  *See Times Mirror Magazines, Inc. v. Las Vegas Sports News*, 212 F.3d 157, 169 (3d Cir. 2000), *cert. denied,* 531 U.S. 1071 (2001). ("potential damages to a mark holder's reputation or goodwill or likely confusion between parties' marks constitute irreparable injury or the purpose of granting a preliminary injunction"). Under these circumstances, injunctive relief is imperative to RUSM's ongoing operations.

**POINT III.**

**COMPELLING PUBLIC POLICIES FAVOR
THE ENTRY OF A PRELIMINARY INJUNCTION**

Amini appears to argue that injunctive relief would be contrary to the public interest because the public is "better served by being informed of the truth [.]"  *See* Amini's Brief at p. 31.  This First Amendment-based argument fails for the reasons stated above at pages 7-13. Under the facts and circumstances presented here, injunctive relief plainly would advance two compelling public interests.  First, it would prevent the public from being deceived and confused by Amini's network of bogus websites.  Second, compelling Amini to comply with his non-disparagement obligation would advance the public policy strongly favoring the enforcement of Settlement Agreements.  *See* Plaintiffs' Opening Brief at 14-15.

**CONCLUSION**

For the foregoing reasons as well as those set forth in their opening brief, plaintiffs respectfully request that this Court preliminarily enjoin the defendants or anyone acting by or through them from engaging in any further disparagement of RUSM; using the infringing domain names or any colorable imitation thereof; and from attempting to sell, selling, hypothecating or otherwise transferring any rights in or to the infringing domain names or any

14

other similar domain names.

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

One Gateway Center
Newark, New Jersey 07102
Attorneys for Plaintiffs


By:  ___/s/ James P. Flynn_____
          James P. Flynn
          William S. Gyves
          Members of the Firm

DATED:  October 25, 2013

15