# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ROSS UNIVERSITY SCHOOL OF MEDICINE AND GLOBAL EDUCATION**,

        **Plaintiff,**

**vs.**

**BEHZAD AMINI,**

        **Defendant**

**Case No.: 3:13 -CV-06121**

---

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3)

---

Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), Defendant respectfully files this Motion to Dismiss Plaintiff's Complaint. The grounds for this motion are set forth more fully in the attached memorandum incorporated by reference herein.

Date:  October 28, 2013

_____

Behzad Amini – Pro Se
13835 N. Tatum Blvd #9-280
Phoenix, AZ 85032
602-980-0900
bccpda@yahoo.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ...............................................................................................5

- GRIEVANCE HEARING PROCESS .........................................................8

- SETTLEMENT AGREEMENT ................................................................9

- BREACH OF CONTRACT: VIOLATION OF SETTLEMENT
  AGREEMENT ...................................................................................10

STATEMENT OF FACTS ..................................................................................12

ARGUMENTS

I.      12(B)(2).................................................................................13

II.     12(B)(3).................................................................................21

CONCLUSION ...............................................................................................22

# TABLE OF AUTHORITIES

## CASES                                                                                    PAGES

*Carterer Sav. Bank, F.A. v. Shushan*,
843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) .................................................................. 13

*Rehearing den.*, *cert.den.*,
113 S.Ct. 61, 506 U.S. 817, 121 L.Ed.2d (1992) ........................................................ 13

*Decker v.Circus Circus Hotel*,
49 F.Supp.2d. 361 (D.N.J. 1999) .................................................................................. 13

*Young v. New Haven Advocate*,
315 F.3d 256, 261 (4th Cir. 2002) ................................................................................ 13

*Giangola v. Walt Disney World Co.*,
753 F.Supp. 148 (D.N.J. 1990) ..................................................................................... 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 474 (1985) .............................................................................................. 14

*International Shoe Co. v. Washington*,
326 U.S. 310, 316 (1945) .............................................................................................. 14

*Asashi Metal Industry Co. v. Superior Court*,
480 U.S. 102 (1987) ...................................................................................................... 14

*Hanson v. Denckla*,
357 U.S. 235, 253 (1958) .............................................................................................. 14

*MCGEE V. INTERNATIONAL LIFE INSURANCE CO.*,
355 U.S. 220, 223 (1957) .............................................................................................. 14

*SUPERFOS INVESTMENTS LTD. V. FIRSTMISS FERTILIZER, INC.*,
744 F. SUPP. 393, 398 VA. 1991) .................................................................................. 14

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
466 U.S. 408, 414 (1984) .............................................................................................. 15

*CHUNG V. NANA DEV. CORP.*, 783
F.2D 1124, 1130 (4TH CIR. 1986 ................................................................................. 15

*ALS SCAN, INC. V. DIGITAL SERV. CONSULTANTS, INC.*,
812 F. SUPP. 1095, 1097-1101 (W.D. WASH. 1993) .................................................. 15

*BREMEN V. ZAPATA OFF-SHORE CO.*,
407 U.S. 1, 10-15, 92 S. CT. 1907, 1913-16, 32 L. ED. 2D 513, 520-23 (1972) ............................ 17

*N.H. V. H.H.*,
418 N.J. SUPER. 262, (APP. DIV. 2011) (QUOTING *MILLER V. MILLER*, 160 N.J. 408, 419 (1999) ... 17

## CASES                                                                       PAGES

Muhammad v. Cnty. Bank of Rehoboth Beach,
 189 N.J. 1, 15 (2006)..................................................................................... 17

Sitogum Holdings, Inc., 352
N.J. Super. 555, 564 (Ch. Div. 2002) .......................................................... 17

Rudbart v. North Jersey District Water Supply Commission,
127 N.J. 344, 356, cert. denied, 506 U.S. 871, 113 S. Ct. 203, 121 L. Ed. 2d 145 (1992)......... 17

Mitrano v. Hawes, 377
F.3d 402, 405 (4th Cir. 2004) ...................................................................... 21

Sucampo Pharmaceuticals, Inc v. Astellas Pharma, Inc.,
471 F.3d 544, 549-50 (4th Cir. 2006).......................................................... 21

## STATUE                                                                      PAGES

28 U.S.C. § 12b(2).......................................................................................13
28 U.S.C. § 12b(3).......................................................................................21

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**PLAINTIFF'S COMPLAINT**

1.  Defendant Behzad Amini, Pro Se, submits this memorandum of law in support of his Motion to Dismiss Plaintiff's Complaint, Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) As grounds therefore, Defendant states as follows:

<u>**PRELIMINARY STATEMENT**</u>

2.  Ross University School of Medicine (hereafter Ross University) is a <u>*for-profit*</u> institution that provides medical education, with a campus on the Caribbean island of Dominica. Ross University's main administrative office is located in Miramar, Florida, where offices of student services, registrar, and clinical clerkships are located. Ross University's administrative office in New Jersey only provides Student financing (**Exhibit-1**).  Ross University is owned by DeVry, Inc. which is a publicly traded company.

3.  Defendant Behzad Amini resides in Phoenix,  Arizona.  He has no connection to New Jersey, such as owning property, maintaining an office or an agent, or directing any business specifically to New Jersey. Mr. Amini never lived in New Jersey before. Decl. ¶ 1

4.  On October 16, 2013, Ross University filed this lawsuit against Mr. Amini, alleging claims of breach of contract, violation of the anticybersquatting act, trademark dilution in violation of the Federal Trademark Dilution Act of 1995 and related state law, and Infringement of registered trademark in violation of section 32(1) of the Lanham Act and related State law.

5.  On October 16, 2013 Mr. Armini was served by email in Arizona with a Summons and Complaint for this case.

6.   There is a well-documented history of malicious retaliation by Ross University against Mr. Amini for whistleblowing activities, notwithstanding his excellent performance as a student.

7.   Ross University attempted three times to force Mr. Amini into signing the settlement agreement in exchange for basic services that any medical student at the university was entitled to receive from its administration. The first attempt is reflected most notably in the "Extension Agreement" for his USMLE 1 proffered in exchange for his perpetual silence about the school and its business practices (**Exhibit-2**). The second attempt was on June 2011 when Ross University refused to schedule Mr. Amini for a clinical rotation unless he signed the settlement agreement. In both instances Mr. Amini refused to sign. On the third attempt, Ross University threatened to take him before the grievance committee unless he signed. Mr. Amini then agreed to sign the agreement and to leave Ross (**Exhibit-3**), New Jersey being the forum of choice for Ross University.

8.   But Ross University did not perform its obligations to Mr. Amini under the Settlement Agreement and breached its obligations to Mr. Amini. Specifically, Ross University has breached Section 4.18 of the Settlement Agreement by disclosing to Mr. Amini's new medical school, AUA, the circumstance of Mr. Amini's transfer, which led to Mr. Amini's discharge from AUA on March, 2013.

9.   Mr. Amini has suffered significant damages. First, his medical education has been short-circuited by Ross University. Second, he is in debt for the amount of $239,000(**Exhibit-4**), for attending Ross University, though he has nothing to show for this financial liability. Third, he

PAGE - 2

has had to endure emotional and psychological suffering as a result of the plaintiff actions. Mr. Amini had no money left to go to New Jersey to file a lawsuit against Ross University.

10.  In a case very similar to Mr. Amini's, another student, Michael Green, was also forced to accept a settlement agreement in exchange for very basic services that any Ross University student is entitled to receive. Attached here as **Exhibit-5** is his settlement agreement, with New Jersey being the forum of choice for Ross University. Mr. Greene refused to sign the agreement and he has launched a lawsuit against Ross University. He also has launched a website against the school at **StopDevry.net**, where he shares about his experience.

11.  While the plaintiff and their attorney like to brag about their 97% pass rate for USMLE, only 52% of Ross Medical students graduate on time compared to the 97% graduation rate for the average medical school **(Exhibit-6)**. There are many students like Mr. Amini, such as Michael Greene, who are sitting on massive debt, which prompted a US Senator and the media to start looking into the plaintiff's unethical business practices.

12.  On September 10, 2013 Illinois Senator Dick Durbin posted on his website the following complaint that had been filed with the Secretary of the Department of Education against the plaintiff (**Exhibit-7**). Here is the excerpt of the Senator complaint:

> "This troubling piece explains how two DeVry-owned foreign medical schools, American University of the Caribbean School of Medicine and **Ross University School of Medicine, prey on students who have been rejected by traditional U.S. medical schools. These students are lured into massive amounts of debt – much higher than traditional schools – and receive very little to show for it by way of a useful degree**."

PAGE - 3

13.  On September 10, 2013, Bloomberg published the article "DeVry Lures Medical School Rejects as Taxpayers Fund Debt," describing how the plaintiff is shortchanging taxpayer and students of millions of dollars (**Exhibit-8**).

14.  After reading the above articles, Mr. Amini decided to share his own personal experience with Ross University to the public. He purchased six domains with the word "Ross" in them on September 21, 2013, activated three of the domains, and published his content up until October 16, 2013 for a total of 24 days.

15.  The entire website is in the record (**Exhibit-9**). Mr. Amini placed a disclaimer at the top of the first page of the website, disclosing to visitors that the website is not associated with Ross University (**Exhibit-10**). Mr. Amini's website contains no advertising, charges no fees, does not seek to sell anything or direct users to websites that do. Consistent with Mr. Amini's First Amendment Right of Freedom of Speech, the website seeks only to inform and allow visitors to express their opinions on a variety of topics. The website does not exist for any commercial purpose and it has no defamatory statement against anyone.

16.  In addition to his personal opinion and experience, Mr. Amini's website provides information that is already of public record or available elsewhere on the internet. The websites had links to Senator Durbin's web page, the Bloomberg News, the Tampa Bay Times (**Exhibit-11**), a few regulatory agencies, and a link to internal documents that are on public record.

17.  After recent negative press against the plaintiff by Bloomberg News, Senator Durbin, and the attorney generals of the states of Illinois and Massachusetts (**Exhibit-12**), the plaintiff is angry and is lashing out against Mr. Amini.

18.   Contrary to the claims of the plaintiff that they are an agent of good will, that they are comparable to the average US medical school, and that they are a repeatable medical institution, the evidence suggests otherwise. The public, the taxpayer, and the students are better served by being informed of the truth so that their money is not misspent.

## BACKGROUND

19.   Mr. Amini commenced his studies at the Ross University Dominica campus in January 2009. Mr. Amini was an outstanding student. He maintained a GPA of 3.2 (**Exhibit-13**) while attending Ross University and received recommendation from his attending (**Exhibit-14**). He earned a 91% USMLE Step I (**Exhibit-15**).

20.   On July, 2010, Mr. Amini emailed a complaint to the president of Ross University, Mr. Tom Shepherd, regarding the high enrollment rate, the high failure rate, the delays in clinical rotations, the violations of the student handbook, the breach of contract, and the sudden change in the grade distribution (**Exhibit-16**). The president of Ross University responded by admitting a mistake had been made in the grade distribution and that he was willing to meet to discuss the complaint. But he never followed through (**Exhibit-17**).

21.   Mr. Amini decided to contact regulatory agencies. In every instance, Mr. Amini informed Ross University officials of his intent and he soon experienced retaliatory responses from the school, and multiple attempts to get him to sign the non-disparagement agreement.

22.   In September of 2010, Mr. Amini filed a complaint against Ross University with the Medical Board of California regarding the high enrollment rate as well as questioning the academic integrity of Ross University. The Medical Board of California found Mr. Amini's complaint legitimate and started an investigation against Ross University in 2011(**Exhibit-18**).

23.  In September 2010, Mr. Amini filed a complaint against Ross University with the National Board of Medical Examiners for cheating incidents during the comp exam (**Exhibit-19**).

24.  In November 2010, Mr. Amini's mother died in Iran and he requested an extension before taking his board exam. In any other circumstance, an extension would have been granted to other students at their request. However, Ross University required Mr. Amini to provide a proof of death. Since he had no family left in Iran except for his estranged father, he had to travel to Iran to obtain this certificate. Upon his arrival, he was arrested and taken to prison, where he was kept for three weeks and subject to interrogation and torture. After being released from prison, Mr. Amini came back to the US and submitted the certificate of death to Ross University, upon which Ross University granted him a thirty-day extension.

25.  Since Mr. Amini had spent over a month in Iran in order to acquire this certificate for Ross, he asked Ross University for an additional extension. Ross University, however, would not grant an extra extension unless Mr. Amini signed a non-disparagement agreement (**Exhibit-2**).

26.  Mr. Amini refused to sign, and instead took his USMLE Step-1 exam as scheduled, passing with a score of 91%(**Exhibit-15**).

27.  This was the first attempt by Ross University to force Mr. Amini into signing a non-disparagement agreement in exchange for granting him the very basic educational services that any other medical student at the university was entitled to.

28.  On July 2011, Mr. Amini filed a complaint against Ross University with the Department of Education for delaying clinical rotations (**Exhibit-20**). When Mr. Amini tried to arrange for another rotation after he had submitted his complaint, Ross University refused to schedule his rotation, and instructed him to have his attorney contact the school.

PAGE - 6

29. Mr. Amini asked his ex-wife, who was an attorney, to speak with William Gyves, Ross University's attorney. Mr. Gyves told her that Ross University didn't want Mr. Amini to graduate. In order for Mr. Amini to move forward, he would have to sign a non-disparagement agreement.

30. This was the second attempt by Ross University to force Mr. Amini into signing a non-disparagement agreement in exchange for granting him the very basic educational services that any other medical student at the university was entitled to.

31. Mr. Amini's ex-wife informed William Gyves that he would only agree to a verbal assurance if Mr. Amini would not say anything negative against Ross University as long as Mr. Amini received his clinicals rotations without any interruption to his medical education. They agreed.

32. The rotation Ross University setup for Mr. Amini, however, was at Jamaica Hospital in New York, which was a very bad assignment. Mr. Amini requested a better hospital, but his request was denied. Mr. Amini's first rotation was OBGYN. His clinical supervisor accused Mr. Amini of having bad body odor **(Exhibit-21).** He did everything she requested, even working extra hours, but Mr. Amini's supervisor was not satisfied.

33. In Mr. Amini's absence, his OBGYN supervisor discussed Mr. Amini's body odor with two other students to humiliate Mr. Amini further. Other students began to ridicule Mr. Amini about his body odor as well, particularly Roger Curry, an SGA student, whose statement Ross University used later on as a pretext to drag Mr. Amini before the grievance committee.

34. In response, Mr. Amini's ex-wife wrote a cease and desist letter to the OBGYN department head, asking him to investigate the matter **(Exhibit-22).** The department never

PAGE - 7

responded, and Mr. Amini was told by another supervisor that Ross University had contacted the department prior to his rotation to warn them about him in order to make Mr. Amini's life difficult at Jamaica Hospital. When Mr. Amini asked Ross to investigate, they never did.

35.   The harassment by Roger Curry and another student, Anupam Gupta, continued into Mr. Amini's next rotation, pediatrics, at Jamaica Hospital. The two students were disparaging Mr. Amini about his body odor and about his low grade from OBGYN. They both constantly talked about him behind his back and would publically humiliate him.

36.   In all that time, Mr. Amini never responded to their negativism. When the six-week rotation ended, the supervisor, Dr. Friedman, met with each student individually. At the meeting with Mr. Amini, he told him that Ross University had made negative comments about him, but that he would not judge Mr. Amini by what Ross University has said, but by his performance at the hospital. Mr. Amini received an "A."

37.   The day Mr. Amini's pediatric rotation ended at Jamaica Hospital, he received an email from Ross University, stating they wanted to take him before the grievance committee. Apparently Anupam Gupta, who had been harassing Mr. Amini, made a claim against him. The claims were unfounded.

**GRIEVANCE HEARING PROCESS**

38.   Ross University wouldn't grant Mr. Amini due process for the grievance hearing. First, Ross University hired an IT investigator to find any defamatory information against Mr. Amini to use at the grievance committee. This investigator never spoke to Mr. Amini at all during these investigations, asking for his side of the story. Second, Ross University did not follow its own internal procedures – as outlined in the student handbook – for a fair grievance

process. Mr. Amini had to hire an attorney, George Cotz, to help him. Attached here as **Exhibit-23**, are two letters that attorney Cotz wrote to Ross University's attorney, stating that Ross University was not following its own internal guidelines.

39.  Even after attorney Cotz's involvement, Ross University wouldn't grant Mr. Amini request for due process as defined in their internal guidelines. Then Mr. Amini asked another attorney, Colleen Kerwick, to get involved. Again Ross University wouldn't grant Mr. Amini due process. Therefore, Mr. Amini was not able to adequately defend himself.

40.  During his internal medicine rotation at Griffin Hospital, Mr. Amini experienced a nervous breakdown due to emotional distress as result of Ross University's intent to kick him out of the program. A few days prior to the signing of the non-disparagement agreement, Mr. Amini left his hospital abruptly and left for Phoenix with the intent to take his own life. His attorney became alarmed and contacted Mr. Amini's ex-wife. After a couple of days, Mr. Amini's ex-wife was able to locate him and encouraged him to sign the agreement and transfer to another university.

## SETTLEMENT AGREEMENT

41.  After realizing that he would not be able to receive a fair hearing, Mr. Amini agreed to sign a settlement agreement and leave Ross University. Like the grievance procedure, the settlement agreement was basically a "take it or live it" proposal in which Mr. Amini was given no option to change any of the terms, including the forum clause of the agreement. Mr. Amni finally succumbed to Ross's stressful tactics, signed a non-disparaging agreement in February 2012, and transferred to AUA in April 2012.

## BREACH OF CONTACT: VIOLATION OF SETTLEMENT AGREEMENT

42.   After Mr. Amini transferred to his new medical school, AUA, he started experiencing mistreatment without knowing the cause. The mistreatment was mainly related to constant delays in scheduling his clinical rotations, which was what Mr. Amini needed to be able to finish his medical education and start his residency.  He informed both his attorney and Ross' attorney that he believed Ross had contacted AUA after his transfer to AUA, but the attorney for Ross denied the allegation.

43.   Then the clinical scheduling delays got worse to the point that Mr. Amini had to ask a physician friend to deal with AUA to arrange his clinical rotations on his behalf as Mr. Amini experienced a nervous breakdown due to emotional distress.

44.   Even after the friend's involvement, the problems continued. He finally personally responded to the school, and AUA used that response as a pretext to drag Mr. Amini before the grievance committee and dismiss him from AUA.

45.   On May 18, 2013, Mr. Amini was informed by his attorney, George Cotz, that the attorney for AUA, Mr. Len Sclafani, stated that they had information, indicating that Mr. Amini transferred to AUA from Ross University without disclosing to AUA the circumstances of his transfer from Ross University.

46.   Given the history of animosity against Mr. Amini, including the retaliation resulting from his complaints to the various regulatory agencies, the repeated denials of basic educational services normally granted to other students, the repeated attempts by Ross University to force Mr. Amini to sign the NDAs in exchange for those services, and the information provided by AUA's attorney to Mr. Amini's attorney on May 18, 2013, the circumstantial evidence points only to one suspect, Ross University.

47.  Therefore, Ross University did not perform its obligations to Mr. Amini under the Settlement Agreement and breached its obligations to Mr. Amini. Specifically, Ross University has breached Section 4.18 of the Settlement Agreement by disclosing to Mr. Amini's new medical School, AUA, the circumstance of Mr. Amini's transfer, which led to dismissal of Mr. Amini's discharge from AUA on March, 2013.

48.  The settlement agreement was a fraud. Fraud was the plaintiff's silence, knowing that they were about to disclose, or already disclosed, to Mr. Amini's new medical School, AUA, the circumstance of Mr. Amini's transfer, which led to Mr. Amini's discharge from AUA in March 2013.  Mr. Amini relied on the false impression of finishing his education, and was therefore damaged as a result of relying upon this false information.


49.  By refusing to provide the very basic services that any medical student at the university is entitled to receive, Ross University used its bargaining power to force a weaker party, Mr. Amini, to agree to its terms, leaving Mr. Amini with no power to negotiate. To Mr. Amini, the non-disparagement agreement was nothing more than a contract of adhesion, a boilerplate contract that Ross University attempted three times to shove down his throat after repeatedly denying him normal student services. Ross University finally succeeded on its third attempt. The terms and conditions of the contract were set by Ross University, and Mr. Amini had little or no ability to negotiate more favorable terms, thus placing him in a "take it or leave it" position.

50.  Furthermore, the settlement agreement was not negotiated in good faith and was forced upon Mr.Amini. Ross University attempted three times to force him into signing the

settlement agreement in exchange for basic services that any medical student at the university was entitled to receive from its administration. The first attempt was in April 2011 in exchange for a 30-day extension for taking his USMLE exam (**Exhibit-11**). The second time was in June 2011 when Ross University refused to schedule Mr. Amini for a rotation unless he signed the settlement agreement. In both instances Mr. Amini refused to sign. On the third attempt, Ross University threatened to take him before the grievance committee unless he signed. Mr. Amini then agreed to sign the agreement and to leave Ross.

## STATEMENTS OF FACTS

51.  Defendant Behzad Amini resides in Phoenix, Arizona. He has no connection to the state of New Jersey. He doesn't own property, bank accounts, maintain an office or an agent, or direct any business specifically to New Jersey. Mr. Amini has never resided in New Jersey. Decl. ¶ 1.

52.  The defendant owes US taxpayers $239,375 as result of his medical education at Ross University. Decl. ¶ 2.

53.  The defendant is <u>unemployed</u> and is unable to pay his student loan.

54.  The defendant has less than $700 left in his bank account. Decl. ¶ 3.

55.  The defendant cannot afford an attorney. Decl. ¶ 4.

56. The defendant has no health insurance plan. Decl. ¶ 5.

57. The defendant has not been able to visit his 7 years old daughter in Canada due to financial difficulties. Decl. ¶ 6.

**ARGUMENT**

**I.      THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(2) AS MR. AMINI IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT.**

58.   Federal Rule of Civil Procedure 12(b)(2) requires dismissal of an action when the court lacks personal jurisdiction over the defendant. "When the exercise of personal jurisdiction is challenged pursuant to Rule 12(b)(2), Fed.R.Civ.P., the question 'is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by the preponderance of the evidence.

59.   Once a defendant raises questions of personal jurisdiction, plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction. *Carterer Sav. Bank, F.A. v. Shushan*, 954 F.2d 141 (3rd Cir. 1992), *rehearing den.*, *cert.den.*, 113 S.Ct. 61, 506 U.S. 817, 121 L.Ed.2d (1992).

59.   New Jersey's long-arm statute provides for personal jurisdiction as far as the Fourteenth Amendment of the United States Constitution permits. Therefore, federal constitutional law determines long-arm jurisdictional questions in New Jersey. *Decker v.Circus Circus Hotel*, 49 F.Supp.2d. 361 (D.N.J. 1999).

60.   To establish jurisdiction over Mr. Amini, who does not reside in New Jersey, this Court must first consider whether jurisdiction is authorized by New Jersey law.  The analysis of personal jurisdiction is normally a two-step inquiry, requiring the application of both statutory and constitutional components.  *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002).

61. To carry its burden of demonstrating that Mr. Amini's contacts with New Jersey are sufficient to confer personal jurisdiction, plaintiff must show with "reasonable particularity" that New Jersey had either specific jurisdiction, where cause of action arose from the defendant's activities within New Jersey, or general jurisdiction from defendant's continuous and systematic conduct in New Jersey. *See Giangola v. Walt Disney World Co.*, 753 F.Supp. 148 (D.N.J. 1990).

62. "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposefully established `minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asashi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), and *Burger King*, 471 U.S. at 475. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a `substantial connection' with the forum State." Id, quoting *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957).

63. The key factor of statutory jurisdiction is purposeful activity in the Commonwealth. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Therefore it is necessary to examine carefully the nature of a Mr. Amini's contacts with New Jersey in order to determine whether he may fairly be subjected to suit. *Superfos Investments Ltd. v. FirstMiss Fertilizer, Inc.*, 744 F. Supp. 393, 398 Va. 1991).

64.  To do so, the Court must first examine whether there were any activities in New Jersey giving rise to the action, and any additional contacts that are unrelated to the action, as these different types of contacts are judged by different standards. *Superfos*, 744 F. Supp. at 398.

65.  Where personal jurisdiction is exercised over a defendant in a lawsuit arising out of or related to the defendant's contacts with the forum, the forum is said to be exercising "specific jurisdiction."  *Id.* at 398 n.3.  "General jurisdiction" is the exercise of personal jurisdiction where the defendant's contacts with the forum do not give rise to or relate to the suit.  *Superfos*, 744 F. Supp. at 398 n.3 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

66.  General jurisdiction requires "continuous and systematic" contacts with the forum, compared to the less stringent standard that applies to specific jurisdiction.  *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1130 (4th Cir. 1986); *see Helicopteros*, 466 U.S. at 415, 416.

### A.    SPECIFIC PERSONAL JURISDICTION DOES NOT EXIST OVER MR. AMINI

67.  The Fourth Circuit has established a three-part test to determine whether exercise of specific personal jurisdiction is appropriate.  This test requires the Court to examine:  "(1) the extent to which the defendant purposefully availed [himself] of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at this State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**1.     MR. AMINI DID NOT PURPOSEFULLY AVAIL HIMSELF OF THE PRIVILEGE OF CONDUCTING ACTIVITIES IN NEW JERSEY**

68.  As to the first prong of this test the Fourth Circuit has provided a number of factors to consider in determining what constitutes "purposeful availment":

(a)     Whether the defendant maintains offices or agents in the forum state;

(b)     Whether the defendant owns property in the forum state;

(c)     Whether the defendant reached into the forum state to solicit or initiate business;

(d)     Whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

(e)     Whether the parties contractually agreed that the law of the forum state would govern disputes;

(f)     Whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

(g)     The nature, quality and extent of the parties' communications about the business being transacted; and

(h)     Whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs*, 561 F.3d at 278.

69.  Mr. Amini resides in Phoenix,  Arizona. He has no connection to New Jersey, such as owning property, maintaining an office or an agent, or directing any business specifically to New Jersey. Mr. Amini never lived in New Jersey before. Decl. ¶ 1.

70.  A forum selection clause is enforceable unless it results from "fraud, undue influence, or overweening bargaining power," is "unreasonable" or "violates" a "strong public policy." M/S *Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10-15, 92 S. Ct. 1907, 1913-16, 32 L. Ed. 2d 513, 520-23 (1972)."Absent `unconscionability, fraud, or overreaching in the negotiations of the settlement, … no legal or equitable basis exists to reform the parties' property settlement agreement." *N.H. v. H.H.*, 418 N.J. Super. 262, 282 (App. Div. 2011) (quoting *Miller v. Miller*, 160 N.J. 408, 419 (1999)).

71.  As stated by the court, unconscionability can be manifested in two ways. The first is procedural unconscionability, which involves a "variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process…." *Muhammad v. Cnty. Bank of Rehoboth Beach*, 189 N.J. 1, 15 (2006), (quoting *Sitogum Holdings*, Inc., 352 N.J. Super. 555, 564 (Ch. Div. 2002)) cert. denied, 549 U.S. 1338, 127 S. Ct. 2032, 167 L. Ed. 2d 763 (2007). The second is substantive unconscionability, which is determined by applying the four factors identified by Court in *Rudbart v. North Jersey District Water Supply Commission*, 127 N.J. 344, 356, cert. denied, 506 U.S. 871, 113 S. Ct. 203, 121 L. Ed. 2d 145 (1992). These factors are: "[1] the subject matter of the contract, [2] the parties' relative bargaining positions, [3] the degree of economic compulsion motivating the `adhering' party, and [4] the public interests affected by the contract."

72.  The alleged settlement agreement is attached to the complaint as Exhibit-21. First, Mr. Amini contests that the settlement agreement was a fraud. Fraud was the plaintiff's silence, knowing that they had already, or were about to disclose to Mr. Amini's new medical School, AUA, the circumstance of Mr. Amini's transfer, which led to Mr. Amini's discharge from AUA in March 2013.  Mr. Amini relied on the false impression of finishing his education, and was therefore damaged as a result of relying upon this false information.

73.  Second, by refusing to provide the very basic services that any medical student at the university is entitled to receive, Ross University used its bargaining power to force a weaker party, Mr. Amini, to agree to its term, leaving Mr. Amini with no power to negotiate. To Mr. Amini, the non-disparagement agreement was nothing more than a contract of adhesion, a boilerplate contract that Ross University attempted three times to shove down his throat after repeatedly denying him normal student services. Ross University finally succeeded on its third attempt. The terms and conditions of the contract were set by Ross University, and Mr. Amini had little or no ability to negotiate more favorable terms, thus placing him in a "take it or leave it" position.

74.  Third, the settlement agreement was not negotiated in good faith and was forced upon Mr.Amini. Ross University attempted three times to force him into signing the settlement agreement in exchange for basic services that any medical student at the university was entitled to receive from its administration. The first attempt was on April 2011 in exchange for a 30-day extension for taking his USMLE exam (**Exhibit-17**). The second time was on June 2011 when Ross University refused to schedule Mr. Amini for a rotation unless he signed the settlement agreement. In both instances Mr. Amini refused to sign. On the third attempt, Ross University

threatened to take him before the grievance committee unless he signed. Mr. Amini then agreed to sign the agreement and to leave Ross.

75. Fourth, Ross University's choice in the forum selection clause arises from nothing more than forum shopping, conveniently selecting New Jersey where the plaintiff's law firm, Epstein Becker & Green, is located. In the present case, the plaintiffs' main business is located outside of the state of New Jersey. The school campus is located on the Caribbean island of Dominica, the main administrative office is located in Miramar, Florida, and the dean of Ross University Medical School lives in Florida. The president of Ross University lives outside of New Jersey. Almost all of the witnesses for this case live outside of the great state of New Jersey. Again, the New Jersey office only handles student finance (**Exhibit-1**).

76. Fifth, Ross University and their attorney's choice of New Jersey in the forum clause makes it impossible for students who can't afford to fly across the country to launch a complaint against the plaintiff in New Jersey or have their day in the court in case of any dispute in the case. Mr. Amini did request for a change of venue, but the plaintiff's attorney wouldn't agree, essentially holding a "take it or leave it" position.

77. In a case very similar to Mr. Amini's, another student, Michael Green, was also forced to accept a settlement agreement in exchange for very basic services that any Ross University student is entitled to receive. Attached here as **Exhibit-5** is his settlement agreement with New Jersey being the forum of choice for Ross University. Mr. Greene refused to sign the agreement and he has launched a lawsuit against Ross University. He also has launched a website against the school at StopDevry.net, where he shares about his experience.

PAGE - 19

78.  Accordingly, for each of these reasons, plaintiff cannot satisfy the first prong of the three-part test required to exercise personal jurisdiction over Mr. Amini.

### 2.  PLAINTIFF'S CLAIMS DO NOT ARISE OUT OF ACTIVITIES DIRECTED AT NEW JERSEY

79.  Under the second prong of the three-part test, the Court must consider whether plaintiff's claims arise out of activities directed at New Jersey.  *ALS Scan.*, 293 F.3d at 712.  Here, they do not. There is no evidence suggesting that Mr. Amini's activities were directed at New Jersey.

### 3.  THE EXERCISE OF JURISDICTION WOULD NOT BE CONSTITUTIONALLY REASONABLE.

80.  None of Mr. Amini's website or internet activities were substantially related to New Jersey. Accordingly, plaintiff cannot satisfy the third prong, or any prong, of the three-part test, and New Jersey cannot exercise specific personal jurisdiction over Mr. Amini.

### B.  NEW JERSEY LACKS GENERAL PERSONAL JURISDICTION BECAUSE MR. AMINI DOES NOT HAVE CONTINUOUS AND SYSTEMATIC CONTACTS WITH NEW JERSEY

81.  "Even when a cause of action does not arise out of or relate to the [non-resident defendant's] activities in the Forum State, due process is not offended by the States subjecting the [non-resident defendant] to its in personam jurisdiction when there are sufficient contacts between the States and the [non-resident defendant]."  *Helicopteros*, 466 U.S. at 414.  These contacts must be "continuous and systematic" in order to support general personal jurisdiction over Mr. Amini.  *Superfos*, 774 F. Supp. at 399.

82.  Mr. Amini resides in Phoenix,  Arizona.  He has no connection to New Jersey, such as owning property, bank accounts, maintaining an office or an agent, or directing any business specifically to New Jersey. Mr. Amini never lived in New Jersey before. Decl. ¶1.

83.  Based on the facts presented in this case, Mr. Amini contacts with New Jersey do not rise to the level of "continuous and systematic" as required by due process.  Accordingly, the Court may not exercise in personam jurisdiction over Mr. Amini.

## II.  THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE UNDER RULE 12(B)(3).

84.  The allegations are insufficient on its face, and this case should also be dismissed based on improper venue under Rule 12(b)(3). In the Fourth Circuit, courts consider the "entire sequence of events underlying the claim" to determine where venue is appropriate.  *See Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004).  A court does not take all facts pled in the complaint as true, and is free to consider facts outside the pleadings.  *Sucampo Pharmaceuticals, Inc v. Astellas Pharma, Inc.*, 471 F.3d 544, 549-50 (4th Cir. 2006).  Once venue is challenged, the plaintiff bears the burden of showing that venue is proper.  *Rice Contracting Corp. v. Callas Contractors, Inc.*, No. 1:08cv1163, 2009 U.S. Dist. LEXIS 3, 2009 WL 21597, at *1 (E.D. Va.Jan. 2, 2009).  Plaintiff cannot meet its burden here.

85.  In short, Mr. Amini resides in Phoenix,  Arizona.  He has no connection to New Jersey, such as owning property, maintaining an office or an agent, or directing any business specifically to New Jersey. Mr. Amini never lived in New Jersey before. Mr. Amini wrote the content of his website outside of New Jersey, and published his website outside of New Jersey. No "substantial part" of those acts is alleged to have occurred in this district, and venue is therefore inappropriate here.

## CONCLUSION

86.  For all the foregoing reasons, the Court should enter an order: dismissing the Complaint in its entirety under Rules 12(b)(2) and 12(b)(3);

**WHEREFORE,** the Defendent, Behzad Amini, requests this Court grant Motion to dismiss, for the foregoing reasons, based on the above cited authorities.

**Dated: 28 of October, 2013.**

_____

Behzad Amini – Pro Se

## VERIFICATION

I, Behzad Amini, hereby verify and certify under 28 U.S.C. § 1746 to the following facts:

1.  I am  the  defendant in the above case.

2.  I have read the foregoing motion and know the contents thereof, and the same is true to my own knowledge, except to those matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

I certify under penalty of perjury that the foregoing is true and correct.

**Dated: 28 of October, 2013.**

_____

Behzad Amini – Pro Se