**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ROSS UNIVERSITY SCHOOL OF**
**MEDICINE AND GLOBAL EDUCATION**,

        **Plaintiff,**

**vs.**

**BEHZAD AMINI**,

        **Defendant**

Case No.: 3:13 -CV-06121

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEPENDENT'S  MOTION FOR DISMISSAL PURSUANT TO FEDERAL**
**RULES OF CIVIL PROCEDURE 12(B)(2), 12(B)(3), AND 12(B)(6), OR,**
**ALTERNATIVELY, TO TRANSFER VENUE PURSUANT TO FEDERAL**
**RULES OF CIVIL PROCEDURE 1404**

---

Date:  NOVEMBER 19, 2013

Behzad Amini – Pro Se
13835 N. Tatum Blvd #9-280
Phoenix, AZ 85032
602-980-0900
bccpda@yahoo.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT................................................................................1

BACKGROUND ...............................................................................................5

ARGUMENTS

    I.       12(B)(2), 12(B3)...............................................................................10

    II.      1404...............................................................................................13

CONCLUSION ...............................................................................................24

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGES**

*Weber v. Jolly Hotels*, 977
F. Supp. 327 – 1997 ............................................................................................. 12

*Osteotech v. Gensci Regeneration Services,* 6
F. Supp.2d 349 (D.N.J. 1997) ............................................................................... 12

*Green v. William Mason & Co.* 976
 F. Supp. 298 - 1997 ............................................................................................. 12

*Decker v. Circus Circus Hotel*
F. Supp. 2d 743 .................................................................................................... 10

*Job Haines Home for the Aged v. Young,*
936 F. Supp. 223, 228 (D.N.J. 1996) ..................................................................... 14

*Jumara v. State Farm Ins. Co.,* 55
F.3d 873, 879-80 (3d Cir. 1995)............................................................................ 14

*Shutte v. Armco Steel Corp*.,
431 F.2d 22, 25 (3d Cir. 1970) .............................................................................. 15

*Ramada Worldwide, Inc. v. Bellmark Sarasota Airport, LLC*,
2006 WL1675067, at *2 (D.N.J. June 15, 2006), ................................................... 15

*In re Consolidated Parlodel Litigation*,
22 F. Supp. 2d 320, 323-24 (D.N.J. 1998)............................................................. 15

*Cf. Ricoh Co., Ltd. v. Honeywell Inc*.,
817 F. Supp. 473, 481-82 (D.N.J. 1993)................................................................ 15

*Sadler v. Hallsmith SYSCO FoodServices,*
2009 WL 1096309, at *4-5 (D.N.J. 2009) ............................................................. 15

*Bremen v. Zapata Off-Shore Co*.,
407 US 1, 10-15, 92 S. Ct. 1907, 1913-16, 32 L. Ed. 2d 513, 520-23 (1972)............... 19

*N.H. v. H.H*., 418
N.J. Super. 262, 282(App. Div. 2011) ................................................................... 19

*Miller v. Miller,*
160 N.J. 408, 419 (1999)....................................................................................... 19

**STATUE**                                                                             **PAGES**
28 U.S.C. § 12ʙ(2)................................................................................................10
28 U.S.C. § 12ʙ(3)................................................................................................10
28 U.S.C. § 1404 .................................................................................................24

## PRELIMINARY STATEMENT

1. As noted by this Court during the October 28, 2013 hearing, Mr. Amini will not be able to adequately represent himself without an attorney and at a distance of 2,394 miles away from New Jersey.

2. Mr. Amini resides in Phoenix, Arizona. He has no connection to the state of New Jersey. He does not own property, bank accounts, maintain an office or an agent, or direct any business specifically to New Jersey. Mr. Amini has never resided in New Jersey. **Decl. ¶ 1.**

3. Mr. Amini is unemployed and has less than $700 left in his bank account and is unable to maintain a basic living. He Owes US taxpayers $239,375 as result of his medical education at Ross University, but is unable to service his loan due to financial hardship. He cannot afford an attorney. He has no health insurance and has not been able to visit his seven-year-old old daughter in Canada due to financial difficulties. **Decl. ¶ 2, ¶ 3, ¶ 4, ¶ 5, ¶ 6, ¶ 7.**

4. The current forum is not accessible to the defendant by car or train, and given that he lacks financial means, he can neither afford a plane ticket, hotel expenses, nor hire an attorney.

5. In his response to Mr. Amini's motion, Attorney Flynn has stated that Mr. Amini is financially capable to move to New Jersey and defend himself against this lawsuit because he can afford a cellular phone. Having a cell phone or paying $68 to register six domains is not an indication that Mr. Amin is capable of paying thousands of dollars that he doesn't have to defend this case in a New Jersey court.

6. Therefore, an extraordinary circumstance does exist, and the defendant respectfully asks this court to transfer the venue to the District Court of Arizona so he can advocate his position without the inherent disadvantage of arguing a case from 2,394 miles away.

7. <u>The plaintiff's main business is located outside of the state of New Jersey</u>. According to Ross University's own published catalog from 2013 (**see below Exhibit-1**), and contrary to the plaintiff's statement to this Court, RUSM's administrative functions in New Jersey are not substantial. The RUSM campus is located on the Caribbean island of Dominica, and the dean's office, who signed the verified complaint, the office of registrar, the office of student services, and the office of clinical rotations are all located in Florida. The President's office is located in Chicago. Majority of the staff for the educational and business operations is located outside of New Jersey. The New Jersey office only handles student finance. Mr. Amini had spent over a year attending RUSM in Dominica. He had spent over six months attending RUSM in Miami, but he had never visited Ross University in New Jersey.



8.  Furthermore, DeVry Inc., an Illinois corporation, owns and operates three schools in Arizona, located in: Phoenix, Mesa, and Glendale.

9.  Ross University regularly conducts informational seminars on its program in Arizona.

10. Since 2006, over ten lawsuits have been filed by students against Ross University, and over one hundred (>100) lawsuits have been filed against the plaintiff's parent company, DeVry, Inc., across the country.

11.  Therefore an order transferring the venue to the United States District Court for the District of Arizona would not inconvenience or prejudice the plaintiff in any way because of their limitless resources and their ability to litigate this case in any forum.

## DISTRICT COURT OF NEW JERSEY JUDGES DENIED PERSONAL JURISDICTION OVER DEFENDENTS WITH NON-INTERACTIVE WEBSITES

12. In *Weber v. Jolly Hotels*, 977 F. Supp. 327 – 1997, District Judge Wolin held that the District Court lacked jurisdiction because the hotel's website merely amounted to a national advertisement and was not a means of conducting business in New Jersey. The court stated: "sites that merely provide information or advertisements ("passive web sites") - here, without other factors, at least in the Third Circuit, jurisdiction is denied since to hold otherwise would have the effect of creating worldwide jurisdiction over anyone who establishes an Internet website"

13. In *Osteotech v. Gensci Regeneration Services,* 6 F. Supp.2d 349 (D.N.J. 1997), District Judge Bissell found that the District Court did not have personal jurisdiction because the defendant's website was not sufficiently interactive to find that the defendant purposely availed itself of the benefits of the forum state.

PAGE - 3

14.  In *Green v. William Mason & Co*. 976 F. Supp. 298 - 1997, <u>District Judge Walls</u> <u>refused to exercise the District Court of New Jersey's general jurisdiction over the defendant</u> <u>where its website merely constituted an advertisement that provided a toll free number.</u>

15.  In *Decker v. Circus Circus Hotel* F. Supp. 2d 743, <u>the District Court of New Jersey</u> <u>refused to exercise personal jurisdiction over a Nevada casino because, although the defendant -</u> <u>casino operated an interactive website that invited New Jersey residents to make hotel</u> <u>reservations over the Internet, the website contained a forum selection clause that conditioned the</u> <u>use of the website upon an agreement that all disputes be settled in Nevada.</u>

16.  The central facts at issue take place outside of New Jersey. All of the alleged incidents in question have taken place in Phoenix, AZ rather than in New Jersey. In addition, it is undisputed that the defendant Behzad Amini resides in Phoenix, Arizona. None of the alleged incidents took place in the state of New Jersey. Mr. Amini has spent over a year attending RUSM in Dominica. He has spent over six months attending RUSM in Miami. But he has never visited Ross University in New Jersey.

17.  The complaint should be dismissed under Rule 12(B)(2) as Mr. Amini is not subject to personal jurisdiction in this Court. Specific personal jurisdiction does not exist over Mr. Amini as he did not purposefully avail himself of the privilege of conducting activities in New Jersey, the plaintiff's claims do not arise out of activities directed at New Jersey, and, therefore, the exercise of jurisdiction would not be constitutionally reasonable. New Jersey lacks general personal jurisdiction because Mr. Amini does not have continuous and systematic contacts with New Jersey.

18.  Furthermore, the complaint should be dismissed for improper venue under rule 12(b)(3) as Mr. Amini never lived in New Jersey before. Mr. Amini wrote the content of his website outside of New Jersey, and published his website outside of New Jersey. No "substantial part" of those acts is alleged to have occurred in this district, and venue is therefore inappropriate here.

## BACKGROUND

19.  Ross University is owned by DeVry, Inc., which is a publicly traded company. Ross University School of Medicine (hereafter Ross University) is a *for-profit* institution that provides medical education, with a campus on the Caribbean island of Dominica.

20.  This action arises after recent negative press against the plaintiff by Illinois Senator Dick Durbin (**Exhibit-2**), Bloomberg News (**Exhibit-3**), the attorney generals of the states of Illinois and Massachusetts (**Exhibit-4**), and other major news outlets for alleging the plaintiff is defrauding the U.S taxpayers. The plaintiff is angry and is lashing out against Mr. Amini for publishing what has already been stated publicly against the plaintiff.

21.  On September 10, 2013 Illinois Senator Dick Durbin posted the following complaint on his website that had been filed with the Secretary of the Department of Education against the plaintiff (**Exhibit-2**). Here is the excerpt from the Senator's complaint:

> "This troubling piece explains how two DeVry-owned foreign medical schools, American University of the Caribbean School of Medicine and **Ross University School of Medicine, prey on students who have been rejected by traditional US medical schools. These students are lured into massive amounts of debt – much higher than traditional schools – and receive very little to show for it by way of a useful degree**."

PAGE - 5

22.  On that same day, Bloomberg published the article "**DeVry Lures Medical School Rejects as Taxpayers Fund Debt**," describing how the plaintiffs is shortchanging tax payers and students of millions of dollars (**Exhibit-3**).

23.  On April 2013, the offices of the <u>attorneys general of Illinois and Massachusetts</u> <u>issued subpoenas and launched an investigation against the plaintiff's parent company for its use</u> <u>of student loans and for its compensation practices</u> (**Exhibit-4**).

24.  On December 2009, an article published by the <u>Tampa Bay Times</u> described how the plaintiff is shortchanging tax payers millions of dollars. The article stated that "<u>federal</u> <u>regulators are taking a closer look at evidence suggesting taxpayers and students may be getting</u> <u>shortchanged by foreign medical schools</u>."(**Exhibit-5**).

25.  According to the plaintiff's own website, only 52% of Ross Medical students graduate on time compared to 97% for the average medical school (**Exhibit-6**).

26.  Against this backdrop, Mr. Amini decided to share his own personal experience with Ross University to the public. He purchased six domains with the word "Ross" in them on September 21, 2013, activated three of the domains, and published his content up until October 16, 2013 for <u>a total of 24 days</u>.

27.  The entire website is in the record (**Exhibit-7**). Mr. Amini placed a disclaimer at the top of the first page of the website, disclosing to visitors that the website is not associated with Ross University (**Exhibit-8**). Mr. Amini's website contains no advertising, charges no fees, does not seek to sell anything or direct users to websites that do. Consistent with Mr. Amini's First Amendment Right of Freedom of Speech, the website seeks only to

inform and allow visitors to express their opinions on a variety of topics. The website does not exist for any commercial purpose, and it has no defamatory statement against anyone.

28.  In addition to his personal opinion and experience, Mr. Amini's website provides information that is already of public record or available elsewhere on the internet. The websites had links to Senator Durbin's web page, the Bloomberg News, the Tampa Bay Times, a few regulatory agencies, and a link to internal documents that are on public record.

29.  Furthermore, Mr. Amini is not a competitor of the Movants and according to the plaintiff's own admission in their verified complaint, "Amini is a disgruntled former RUSM student" and "Amini is an embittered former RUSM student" and there is no mention of Mr. Amini being a competitor of Ross University or any indication of commercial motive by Mr. Amini.

30. The website has no commercial purpose, and the website disclaimer combined with the content certainly causes no confusion with the official site of the plaintiff.

31.  Therefore, the trademark claims are defective because Mr. Amini's web site consists of protected speech relating to his former University. Not only does the First Amendment protect Mr. Amini's right to publish his views about Ross University on his website, but trademark law does not prevent consumers and their legal representatives from criticizing corporations and from using a company's trademarked names to identify the corporation whom they are criticizing.

32.  The attorney for the plaintiff falsely claimed that Mr. Amini had three attorneys to assist him with the settlement agreement and therefore the settlement agreement was fair and negotiated in good faith. Mr. Amini could have had 500 attorneys to assist him and the result still would have been the same: RUSM dictated the terms and there was nothing to negotiate.

33.  There is a well-documented history of malicious retaliation by Ross University against Mr. Amini for whistleblowing activities, notwithstanding his excellent performance as a student.

34.  Ross University <u>attempted three times</u> to force Mr. Amini into signing the settlement agreement in exchange for basic services that any medical student at the university was entitled to receive from its administration. The <u>first attempt</u> is reflected most notably in the "Extension Agreement" for his USMLE 1 proffered in exchange for his perpetual silence about the school and its business practices (**Exhibit-9**). The <u>second attempt</u> was on June 2011 when Ross University refused to schedule Mr. Amini for a clinical rotation unless he signed the settlement agreement. In both instances Mr. Amini refused to sign. On the <u>third attempt</u>, Ross University threatened to take him before the grievance committee, without granting Mr. Amini due process, unless he signed. Mr. Amini then agreed to sign the agreement and to leave Ross (**Exhibit-10**), New Jersey being the forum of choice for Ross University.

35. Mr. Amini first hired attorney George Cotz, to help him with the grievance process. Attached here as **Exhibit-11**, are two letters that attorney Cotz wrote to Ross University's attorney, stating that Ross University was not following its own internal guidelines.

36.  Even after attorney Cotz's involvement, Ross University wouldn't grant Mr. Amini request for due process as defined in their internal guidelines. Then Mr. Amini asked another

attorney, Colleen Kerwick, to get involved. Again Ross University wouldn't grant Mr. Amini due process. Therefore, Mr. Amini was not able to adequately defend himself.

37.   In fact Ross University was more interested in leveraging the grievance hearing to force Mr. Amini into a settlement agreement rather than granting Mr. Amini due process for the grievance hearing as outlined by Ross University's attorney statement (**Exhibit-12**): "I am advised that it is not too late for your client to withdraw and transfer. If this is of interest to him, let me know and we can pursue it. I am confident Ross will agree to counsel your client re this process and agree to providing a neutral reference to the extent one is needed. We would want a non-disparagement provision (mutual) included in the settlement agreement. We need to move promptly. The hearing is going to proceed on the schedule I have previously indicated to you absent some resolution in the very near future". The settlement agreement was non-negotiable.

38.   Even after the settlement agreement was signed, Ross University did not perform its obligations to Mr. Amini under the Settlement Agreement and breached its obligations to Mr. Amini. Specifically, Ross University has breached Section 4.18 of the Settlement Agreement by disclosing to Mr. Amini's new medical school, AUA, the circumstance of Mr. Amini's transfer, which led to Mr. Amini's discharge from AUA in March 2013.

39.   Mr. Amini has suffered significant damages. First, his medical education has been short-circuited by Ross University. Second, he is in debt for the amount of $239,000(**Exhibit-13**) for attending Ross University, though he has nothing to show for this financial liability. Third, he has had to endure emotional and psychological suffering as a result of the plaintiff's actions. Mr. Amini had no money left to go to New Jersey to file a lawsuit against Ross University.

PAGE - 9

40.  There are many students like Mr. Amini, who are sitting on massive debt, which prompted a US Senator and the media to start looking into the plaintiff's unethical business practices.

## ARGUMENT

I.   **THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(2) AS MR. AMINI IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT AND FOR IMPROPER VENUE UNDER RULE 12(B)(3).**

41.  Mr. Amini resides in Phoenix,  Arizona. He has no connection to New Jersey, such as owning property, maintaining an office or an agent, or directing any business specifically to New Jersey. Mr. Amini never lived in New Jersey before.

42. The central facts at issue take place outside of New Jersey. All of the alleged incidents in question have taken place in Phoenix, AZ rather than in New Jersey. In addition, it is undisputed that the defendant Behzad Amini resides in Phoenix, Arizona.

43.  Specific personal jurisdiction does not exist over Mr. Amini as he did not purposefully avail himself of the privilege of conducting activities in New Jersey, the plaintiff's claims do not arise out of activities directed at New Jersey, and, therefore, the exercise of jurisdiction would not be constitutionally reasonable. New Jersey lacks general personal jurisdiction because Mr. Amini does not have continuous and systematic contacts with New Jersey.

44. <u>The plaintiff's main business is located outside of the state of New Jersey</u>. According to Ross University's own published catalog from 2013 (**Exhibit-1**), and

contrary to the plaintiff's statement to this Court, RUSM's administrative functions in New Jersey are not substantial. The RUSM campus is located on the Caribbean island of Dominica, and the dean's office, who signed the verified complaint, the office of registrar, the office of student services, and the office of clinical rotations are all located in Florida. The President's office is located in Chicago. Majority of the staff for the educational and business operations is located outside of New Jersey. The New Jersey office only handles student finance. Mr. Amini had spent over a year attending RUSM in Dominica. He had spent over six months

**DISTRICT COURT OF NEW JERSEY JUDGES DENIED PERSONAL JURISDICTION OVER DEFENDENTS WITH NON-INTERACTIVE WEBSITES**

45. The entire website is in the record (**Exhibit-7**). Mr. Amini placed a disclaimer at the top of the first page of the website, disclosing to visitors that the website is not associated with Ross University (**Exhibit-8**). Mr. Amini's website contains no advertising, charges no fees, does not seek to sell anything or direct users to websites that do. Consistent with Mr. Amini's First Amendment Right of Freedom of Speech, the website seeks only to inform and allow visitors to express their opinions on a variety of topics. The website does not exist for any commercial purpose, and it has no defamatory statement against anyone.

46. In addition to his personal opinion and experience, Mr. Amini's website provides information that is already of public record or available elsewhere on the internet. The websites had links to Senator Durbin's web page, the Bloomberg News, the Tampa Bay Times, a few regulatory agencies, and a link to internal documents that are on public record.

47.  Furthermore, Mr. Amini is not a competitor of the Movants and according to the plaintiff's own admission in their verified complaint, "Amini is a disgruntled former RUSM student" and "Amini is an embittered former RUSM student" and there is no mention of Mr. Amini being a competitor of Ross University or any indication of commercial motive by Mr. Amini.

48. The website has no commercial purpose, and the website disclaimer combined with the content certainly causes no confusion with the official site of the plaintiff.

49.  In *Weber v. Jolly Hotels*, 977 F. Supp. 327 – 1997, District Judge Wolin held that the District Court lacked jurisdiction because the hotel's website merely amounted to a national advertisement and was not a means of conducting business in New Jersey. The court stated: "sites that merely provide information or advertisements ("passive web sites") - here, without other factors, at least in the Third Circuit, jurisdiction is denied since to hold otherwise would have the effect of creating worldwide jurisdiction over anyone who establishes an Internet website"

50.  In *Osteotech v. Gensci Regeneration Services,* 6 F. Supp.2d 349 (D.N.J. 1997), District Judge Bissell found that the District Court did not have personal jurisdiction because the defendant's website was not sufficiently interactive to find that the defendant purposely availed itself of the benefits of the forum state.

51.  In *Green v. William Mason & Co.* 976 F. Supp. 298 - 1997, District Judge Walls refused to exercise the District Court of New Jersey's general jurisdiction over the defendant where its website merely constituted an advertisement that provided a toll free number.

52.  In *Decker v. Circus Circus Hotel* F. Supp. 2d 743, the District Court of New Jersey refused to exercise personal jurisdiction over a Nevada casino because, although the defendant -

casino operated an interactive website that invited New Jersey residents to make hotel reservations over the Internet, the website contained a forum selection clause that conditioned the use of the website upon an agreement that all disputes be settled in Nevada.

## II.    DEFENDANT REQUESTS THAT THIS COURT TRANSFER VENUE OF THIS ACTION TO THE US DISTRICT COURT FOR THE DISTRICT OF ARIZONA.

53.  Mr. Amini requests that this Court transfer venue of this action to the US District Court for the District of Arizona.

54.  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 USC. § 1404(a). The Court should exercise its power to transfer a case in order "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.

55.  A civil action may be brought wherever "a substantial part of the events or omissions giving rise to the claim occurred." 28 USC. § 1391(a). However, the venue is improper: 1) The plaintiff's main business is located outside of the state of New Jersey. According to Ross University's own published catalog from 2013 (**see Exhibit-1**), and contrary to the plaintiff's statement to this Court, RUSM's administrative functions in New Jersey are not substantial. The RUSM campus is located on the Caribbean island of Dominica, and the dean's office, who signed the verified complaint, the office of registrar, the office of student services, and the office of clinical rotations are all located in Florida. The President's office is located in Chicago.

PAGE - 13

Majority of the staff for the educational and business operations is located outside of New Jersey. The New Jersey office only handles student finance. Mr. Amini had spent over a year attending RUSM in Dominica. He had spent over six months attending RUSM in Miami, but he had never visited Ross University in New Jersey.  2) All of the activities in question--the production of the websites' content and their launch--all originated from Phoenix, AZ where Mr. Amini lives.

56.  When considering the factors that weigh for and against transfer, this Court must look to undisputed facts and matters of record rather than mere assertions found in the attorney's briefs. *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996).

57.  The Third Circuit has considered a variety of factors which may be relevant in a motion to transfer venue. These factors are frequently grouped into two categories: public and private interests. Private interests include plaintiff's forum preference, defendant's forum preference, whether the claim arose outside of the current forum, the convenience of the parties as indicated by their physical and financial condition, the convenience of the witnesses, and the location of relevant books and records. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir. 1995). Public interests include the enforceability of the judgment, practical considerations, the relative court congestion of the two fora, local interests in deciding local controversies at home, the public policies of the fora, and the trial judge's familiarity with the applicable state law in a diversity case. Id. at 879-80. All of these factors may be balanced to determine if the requested venue would better serve the interests of justice than the current forum.

58.  The first private interests to consider are the preferences of the plaintiff and defendant. The Third Circuit previously held that when considering a request for transfer of venue, significant weight must be given to the plaintiff's initial choice of forum, as it "is a

paramount consideration in any determination of a transfer request." *Shutte v. Armco Steel Corp*., 431 F.2d 22, 25 (3d Cir. 1970); *Ramada Worldwide, Inc. v. Bellmark Sarasota Airport, LLC*, 2006 WL1675067, at *2 (D.N.J. June 15, 2006).

59.  A plaintiff's interest in getting to choose the forum may be reduced when the central facts at issue take place outside of the forum. *In re Consolidated Parlodel Litigation*, 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998). Here all of the alleged incidents in question have taken place in Phoenix, AZ rather than in New Jersey. In addition, it is undisputed that the defendant Behzad Amini resides in Phoenix, Arizona.

60.  There is no reason to disregard the plaintiff's preference in favor of the defendant's preferred forum. *Cf. Ricoh Co., Ltd. v. Honeywell Inc*., 817 F. Supp. 473, 481-82 (D.N.J. 1993) (disregarding plaintiff's choice of forum when only connection between forum and subject of litigation was sale of products by defendant in the state); *Sadler v. Hallsmith SYSCO FoodServices,* 2009 WL 1096309, at *4-5 (D.N.J. 2009) (finding that plaintiff's choice of forum weighed against transfer when plaintiffs resided in forum and had witnesses located in forum despite majority of facts being outside the state). However, in the present case, the plaintiff's main business is located outside of the state of New Jersey. According to Ross University's own published catalog from 2013 (**see below Exhibit-1**), and contrary to the plaintiff's statement to this Court, RUSM's administrative functions in New Jersey are not substantial. The RUSM campus is located on the Caribbean island of Dominica, and the dean's office, who signed the verified complaint, the office of registrar, the office of student services, and the office of clinical rotations are all located in Florida. The President's office is located in Chicago. Majority of the staff for the educational and business operations is located outside of New Jersey. The New

Jersey office only handles student finance. Mr. Amini had spent over a year attending RUSM in Dominica. He had spent over six months attending RUSM in Miami, but he had never visited Ross University in New Jersey.

61.  The second private interest to consider is the convenience of the parties.

62.  As noted by this Court during the October 28, 2013 hearing, Mr. Amini will not be able to adequately represent himself without an attorney and at a distance of 2,394 miles from New Jersey.

63.  Mr. Amini resides in Phoenix, Arizona. He has no connection to the state of New Jersey. He does not own property, bank accounts, maintain an office or an agent, or direct any business specifically to New Jersey. Mr. Amini has never resided in New Jersey. **Decl. ¶ 1.**

64.  Mr. Amini is unemployed and has less than $700 left in his bank account and is unable to maintain a basic living. He Owes US taxpayers $239,375 as result of his medical education at Ross University, but is unable to service his loan due to financial hardship. He cannot afford an attorney.  He has no health insurance and has not been able to visit his seven-year-old old daughter in Canada due to financial difficulties. **Decl. ¶ 2, ¶ 3, ¶ 4, ¶ 5, ¶ 6, ¶ 7.**

65.  The current forum is not accessible to the defendant by car or train, and given that he lacks financial means, he can neither afford a plane ticket, hotel expenses, nor hire an attorney.

66.  In his response to Mr. Amini's motion, Attorney Flynn has stated that Mr. Amini is financially capable to move to New Jersey and defend himself against this lawsuit because he can afford a cellular phone. Having a cell phone or paying $68 to register six domains is not an indication that Mr. Amin is capable of paying thousands of dollars that he doesn't have to defend this case in a New Jersey court.

67.   Therefore, an extraordinary circumstance does exist, and the defendant respectfully asks this court to transfer the venue to the District Court of Arizona so he can advocate his position without the inherent disadvantage of arguing a case from 2,394  miles away.

68.   <u>The plaintiff's main business is located outside of the state of New Jersey</u>. According to Ross University's own published catalog from 2013 (**see below Exhibit-1**), and contrary to the plaintiff's statement to this Court, RUSM's administrative functions in New Jersey are not substantial. The RUSM campus is located on the Caribbean island of Dominica, and the dean's office, who signed the verified complaint, the office of registrar, the office of student services, and the office of clinical rotations are all located in Florida. The President's office is located in Chicago. Majority of the staff for the educational and business operations is located outside of New Jersey. The New Jersey office only handles student finance. Mr. Amini had spent over a year attending RUSM in Dominica. He had spent over six months attending RUSM in Miami, but he had never visited Ross University in New Jersey.

69. Furthermore, DeVry Inc., an Illinois corporation, owns and operates three schools in Arizona, located in: Phoenix, Mesa, and Glendale.

70.   Ross University regularly conducts informational seminars on its program in Arizona.

71.   Since 2006, over ten lawsuits have been filed by students against Ross University, and over one hundred (>100) lawsuits have been filed against the plaintiff's parent company, DeVry, Inc., across the country.

72.  Therefore an order transferring the venue to the United States District Court for the District of Arizona would not inconvenience or prejudice the plaintiff in any way because of their limitless resources and their ability to litigate this case in any forum.

73. The third private interest, and perhaps the most important, is the convenience of non- party witnesses. The defendant claims that almost all of the witnesses that he will call are located in Phoenix, Arizona, and that it is particularly inconvenient for them to travel to New Jersey, 2,394 miles away, plus pay for hotels and expenses.

74.  In addition, when considering the convenience of witnesses, the proximity of this Court to the location of the witnesses must again be noted. Phoenix, Arizona is approximately 2,394 miles away from this Court in Trenton, New Jersey. Indeed, the Third Circuit has found that the inconvenience of witnesses may only be considered to the extent that the witnesses would be unavailable for trial in the forum. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir. 1995). Given the proximity of the witnesses and the fact that Phoenix Arizona is not within short distance of this Court's subpoena power, the transfer of venue will substantially reduce the inconvenience to non-party witnesses; otherwise, the defendant's witnesses will not be available for trial in this forum.

75.  Finally, the last private interest to consider is the availability of books or records. None of the alleged incidents took place in the state of New Jersey. Mr. Amini has spent over a year attending RUSM in Dominica. He has spent over six month attending RUSM in Miami. But he has never visited Ross University in New Jersey and does not even know what it looks like. The alleged websites were launched in Phoenix, AZ. All the defendant's records for the alleged claims are also located in Phoenix, AZ. None of the plaintiff's books and records is located in the state of New Jersey since their administrative office in New Jersey only handles student finance

PAGE - 18

(**Exhibit-1**). The verified complaint was signed by Jospeh Flaherty, the dean of RUSM, whose office is located in Florida.

76. Thus, on the whole, the private interests indicate that the interests of justice would be better served by a transfer of venue to the US District Court for the District of Arizona.

77. In addition to the aforementioned private interests, this Court must consider the relevant public interests. First, this defendant can't produce evidence that every judgment entered in New Jersey would be afforded full faith and credit by the state of Arizona. Second, the defendant alleging that the docket of the US District Court for the District of Arizona is significantly less congested than the District of New Jersey. The court's statistical data clearly indicates that the US District Court for the District of Arizona is less congested in terms of civil case loads in comparison to the New Jersey court. The data suggests that from 2011 to 2012, there was almost twice the case load in the US District Court for the District of New Jersey in comparison with the US District Court for the District of Arizona (**Exhibit-14**).

### A FORUM SELECTION CLAUSE

78. A forum selection clause is maybe enforceable unless it results from "fraud, undue influence, or overweening bargaining power," is "unreasonable" or "violates" a "strong public policy." M/S *Bremen v. Zapata Off-Shore Co.*, 407 US 1, 10-15, 92 S. Ct. 1907, 1913-16, 32 L. Ed. 2d 513, 520-23 (1972). "Absent `unconscionability, fraud, or overreaching in the negotiations of the settlement, … no legal or equitable basis exists to reform the parties' property settlement agreement." *N.H. v. H.H.*, 418 N.J. Super. 262, 282 (App. Div. 2011) (quoting *Miller v. Miller*, 160 N.J. 408, 419 (1999)).

79. As stated by the court, unconscionability can be manifested in two ways. The first is

procedural unconscionability, which involves a "variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process…." *Muhammad v. Cnty. Bank of Rehoboth Beach*, 189 N.J. 1, 15 (2006), (quoting *Sitogum Holdings*, Inc., 352 N.J. Super. 555, 564 (Ch. Div. 2002)) cert. denied, 549 US 1338, 127 S. Ct. 2032, 167 L. Ed. 2d 763 (2007). The second is substantive unconscionability, which is determined by applying the four factors identified by the Court in *Rudbart v. North Jersey District Water Supply Commission*, 127 N.J. 344, 356, cert. denied, 506 US 871, 113 S. Ct. 203, 121 L. Ed. 2d 145 (1992). These factors are: "[1] the subject matter of the contract, [2] the parties' relative bargaining positions, [3] the degree of economic compulsion motivating the `adhering' party, and [4] the public interests affected by the contract."

80.  The alleged settlement agreement is attached to the complaint as **Exhibit-10**.

81.  The attorney for the plaintiff falsely claimed that Mr. Amini had three attorneys to assist him with the settlement agreement and therefore the settlement agreement was fair and negotiated in good faith. Mr. Amini could have had 500 attorneys to assist him and the result still would have been the same: RUSM dictated the terms and there was nothing to negotiate.

82.  There is a well-documented history of malicious retaliation by Ross University against Mr. Amini for whistleblowing activities, notwithstanding his excellent performance as a student (See Amini's Motions).

83.  Ross University underlined attempted three times to force Mr. Amini into signing the settlement agreement in exchange for basic services that any medical student at the university was entitled to receive from its administration. The underlined first attempt is reflected most notably in the

"Extension Agreement" for his USMLE 1 proffered in exchange for his perpetual silence about the school and its business practices (**Exhibit-9**). The second attempt was on June 2011 when Ross University refused to schedule Mr. Amini for a clinical rotation unless he signed the settlement agreement. In both instances Mr. Amini refused to sign. On the third attempt, Ross University threatened to take him before the grievance committee, without granting Mr. Amini due process, unless he signed. Mr. Amini then agreed to sign the agreement and to leave Ross (**Exhibit-10**), New Jersey being the forum of choice for Ross University.

84. Mr. Amini had to hire two attorneys because Ross University did not follow its own internal procedures – as outlined in the student handbook – for a fair grievance process. Even after hiring a second attorney, Ross still wouldn't grant Mr. Amini a due process for the grievance hearing. Mr. Amini first hired attorney George Cotz to help him with the grievance process. Attached here as **Exhibit-11**, are two letters that attorney Cotz wrote to Ross University's attorney, stating that Ross University was not following its own internal guidelines.

85. Even after attorney Cotz's involvement, Ross University wouldn't grant Mr. Amini request for due process as defined in their internal guidelines. Then Mr. Amini asked another attorney, Colleen Kerwick, to get involved. Again Ross University wouldn't grant Mr. Amini due process. Therefore, Mr. Amini was not able to adequately defend himself.

86. In fact Ross University was more interested in leveraging the grievance hearing to force Mr. Amini into a settlement agreement rather than granting Mr. Amini due process for the grievance hearing as outlined by Ross University's attorney statement (**Exhibit-12**): "I am advised that it is not too late for your client to withdraw and transfer. If this is of interest to him, let me know and we can pursue it. I am confident Ross will agree to counsel your client re this process and agree to providing a neutral reference to the extent one is needed. We would want a

non-disparagement provision (mutual) included in the settlement agreement. We need to move promptly. The hearing is going to proceed on the schedule I have previously indicated to you absent some resolution in the very near future". The settlement agreement was non-negotiable.

87.  By refusing to provide the very basic services that any medical student at the university is entitled to receive, Ross University used its bargaining power to force a weaker party, Mr. Amini, to agree to its term, leaving Mr. Amini with no power to negotiate. To Mr. Amini, the non-disparagement agreement was nothing more than a contract of adhesion, a boilerplate contract that Ross University attempted three times to shove down his throat after repeatedly denying him normal student services. Ross University finally succeeded on its third attempt. The terms and conditions of the contract were set by Ross University, and Mr. Amini had little or no ability to negotiate more favorable terms, thus placing him in a "take it or leave it" position.

88.  The settlement agreement was not negotiated in good faith and was forced upon Mr.Amini. Ross University attempted three times to force him into signing the settlement agreement in exchange for basic services that any medical student at the university was entitled to receive from its administration. The first attempt was on April 2011 in exchange for a 30-day extension for taking his USMLE exam (**Exhibit-17**). The second attempt was on June 2011 when Ross University refused to schedule Mr. Amini for a rotation unless he signed the settlement agreement. In both instances Mr. Amini refused to sign. On the third attempt, Ross University threatened to take him before the grievance committee, without granting Mr. Amini due process, unless he signed. Mr. Amini then agreed to sign the agreement and to leave Ross.

89.  Ross University's choice in the forum selection clause arises from nothing more than forum shopping. They conveniently selected New Jersey where the plaintiff's law firm, Epstein Becker & Green, is located. By their own admission, the plaintiff implies they receive favorable treatment from the Court in New Jersey, as stated by the plaintiff's attorney: "Amini now wishes to avoid this Court because it already has made determinations adverse to him."

90.  <u>The plaintiff's main business is located outside of the state of New Jersey</u>. According to Ross University's own published catalog from 2013 (**see below Exhibit-1**), and contrary to the plaintiff's statement to this Court, RUSM's administrative functions in New Jersey are not substantial. The RUSM campus is located on the Caribbean island of Dominica, and the dean's office, who signed the verified complaint, the office of registrar, the office of student services, and the office of clinical rotations are all located in Florida. The President's office is located in Chicago. Majority of the staff for the educational and business operations is located outside of New Jersey. The New Jersey office only handles student finance. Mr. Amini had spent over a year attending RUSM in Dominica. He had spent over six months attending RUSM in Miami, but he had never visited Ross University in New Jersey. Again, the New Jersey office only handles student finance (**Exhibit-1**). Almost all of the witnesses for this case live outside of the great state of New Jersey.

91.  Ross University and their attorney's choice of New Jersey in the forum clause makes it impossible for students who can't afford to fly across the country to launch a complaint against the plaintiff in New Jersey or have their day in the court in case of any dispute in the case. Mr. Amini did request for a change of venue, but the plaintiff's attorney wouldn't agree, essentially holding a "take it or leave it" position.

92.  In a case very similar to Mr. Amini's, another student, Michael Green, was also forced to accept a settlement agreement in exchange for very basic services that any Ross University student is entitled to receive. Attached here as **Exhibit-15** is his settlement agreement with New Jersey being the forum of choice for Ross University. Mr. Greene refused to sign the agreement and he has launched a lawsuit against Ross University. He also has launched a website against the school at StopDevry.net, where he shares about his experience.

## CONCLUSION

93.  Mr. Amini is a former student of Ross University who currently resides in Phoenix, Arizona. He was an outstanding medical student. He earned a 91% USMLE Step I score and maintained a GPA of 3.2 while attending Ross University and received recommendation from his attending physician.

94.  Mr. Amini was lured into massive debt by Ross University and has nothing to show for it. He owes US taxpayers $239,000 for attending the university, but is unable to make any payments. He is unemployed and has less than $700 left in his bank account and is unable to maintain a basic living. He also can't afford an attorney.

95.  Mr. Amini resides in Phoenix,  Arizona.  He has no connection to New Jersey such as owning property, maintaining an office or an agent, or directing any business specifically to New Jersey. Mr. Amini never lived in New Jersey before. Mr. Amini wrote the content of his website outside of New Jersey, and published his website outside of New Jersey.  No "substantial part" of those acts is alleged to have occurred in this district, and venue is therefore inappropriate here.

96.  The complaint should be dismissed under Rule 12(B)(2) as Mr. Amini is not subject to personal jurisdiction in this Court. Specific personal jurisdiction does not exist over Mr. Amini

as he did not purposefully avail himself of the privilege of conducting activities in New Jersey, the plaintiff's claims do not arise out of activities directed at New Jersey, and, therefore, the exercise of jurisdiction would not be constitutionally reasonable. New Jersey lacks general personal jurisdiction because Mr. Amini does not have continuous and systematic contacts with New Jersey.

97.  The complaint should be dismissed for improper venue under rule 12(b)(3) as Mr. Amini never lived in New Jersey before. Mr. Amini wrote the content of his website outside of New Jersey, and published his website outside of New Jersey.  No "substantial part" of those acts is alleged to have occurred in this district, and venue is therefore inappropriate here. Furthermore the requirement by the court to defend this case in New Jersey would not only be inconvenient, burdensome, and a gross miscarriage of justice, but it would be a depriving Mr. Amini of his day in court.

**WHEREFORE,**  For all the foregoing reasons, the defendant, Behzad Amini, requests this Court to grant motion to dismiss the Complaint in its entirety under Rules 12(b)(2) and 12(b)(3), or alternatively transfer venue pursuant to 28 USC. § 1404(a) to the United States District Court for the District of Arizona, for the foregoing reasons, based on the above cited authorities.

**Dated: 19 of November, 2013.**



_____

Behzad Amini – Pro Se

PAGE - 25

VERIFICATION

I, Behzad Amini, hereby verify and certify under 28 U.S.C. § 1746 to the following facts:

1.  I am the defendant in the above case.

2.  I have read the foregoing response brief and know the contents thereof, and the same is true to my own knowledge, except to those matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

I certify under penalty of perjury that the foregoing is true and correct.

**Dated: 19 of November, 2013.**



_____
Behzad Amini – Pro Se

PAGE - 26