Behzad Amini – Pro Se
13835 N. Tatum Blvd #9-280
Phoenix, AZ 85032
602-980-0900
bccpda@yahoo.com

RECEIVED
DEC 11 2013
AT 8:30 M
WILLIAM T. WALSH
CLERK

December 10, 2013
**Civil Action No: 3:13 -CV-06121**

VIA MAIL DELIVERY
Clerk
United States District Court District of New Jersey
Clarkson F. Fisher Federal Bldg. & U.S. Courthouse 402 East State Street
Trenton , New Jersey 08608

Re: Ross University School of Medicine, et al. v. Behzad

Amini Dear Sir/Madam:

My Name is Behzad Amini and I am the defendant in above case. Enclosed for filing are the original and one (2) copy of the following documents:

1. Letter to Court and District Court Anne. Thompson

Please forward one copy to the judge in above case and enter the other copy into paser/efiling. My last letter never on November 19th 2013 was never entered into Paser. I am a Pro Se in this case, defending myself from Arizona, without an attorney and any money. Please enter my document into court system accordingly so at least I can have an access to this course for my defense.

Respectfully submitted,

Behzad Amini

cc: District Court Judge (to be assigned w/encls. via mail)
James Flynn (w/encls. via e-filing through the NJ court)

Behzad Amini – Pro Se
13835 N. Tatum Blvd #9-280
Phoenix, AZ 85032
602-980-0900
bccpda@yahoo.com

December 10th, 2013

RECEIVED

DEC 11 2013

AT 8:30________M
WILLIAM T. WALSH
CLERK

VIA MAIL
Hon. Anne E. Thompson, U.S.D.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re: Ross University School of Medicine, et al.v. Behzad Amini, et al. Case No.: 3:13 cv 06121

Dear Judge Thompson:

1. My name is Behzad Amini and I am the defendant in the above-referenced action. Before I response to Mr. Flynn's letter send to this court on December 4, 2013, I start this letter by following statement illustrating that the agreement signed was not in good faith and the following statements from two attorneys who represented Mr. Amini at the time clearly illustrate the point:

1) Statement by attorney George Cotz (Exhibit-A):

> Going forward, I have many concerns and questions about the process being applied against M r. Amini, as it does not seem to be consistent with the Handbook or the Catolog. The school's apparent failure to follow its own procedures reinforces M r. Amini's perception that he is being targeted, and certainly leads me to question the school's good faith.

2) Statement by attorney Colleen Kerwick (Exhibit-B):

> "I believe they want to force him to sign a non-disparagement agreement or to expel him. When I suggested to Gyves for giving him a fair hearing he responded: "No, they want him gone!" I am quite certain this is a witchhunt."

2. Unlike the agreement sign between the Atlantic Marine Construction Company and J-Crew Management, two multi-billion dollar corporations, the agreement signed between Ross University and Mr. Amini was not signed in good faith and it was completely tilted in favor of Ross University.

3. On December 4, 2013, Attorney Flynn wrote a letter to this court in an attempt to draw a comparison between Atlantic Marine Construction Company and the present case. However, there are no similarities.

4. In the case cited by Mr. Flynn, Atlantic Marine Construction Company, a Virginia corporation entered into a subcontract with respondent J-Crew Management, Inc., a Texas corporation, for work on a construction project. J-Crew filed suit in the Western District of Texas. Atlantic Marine moved to dismiss, arguing that the forum selection clause rendered venue "wrong" under 28 U. S. C. §1406(a)and "improper" under Federal Rule of Civil Procedure 12(b)(3). <u>The Court improperly placed the burden on Atlantic Marine to prove that transfer to the parties' contractually preselected forum was appropriate instead of requiring J-Crew, the party acting in violation of the forum-selection clause, to show that public-interest factors overwhelmingly disfavored a transfer.</u>

5. In the present case, Ross University has filed a lawsuit against the defendant, a former student, to silence his non-commercial commentary websites against Ross University.

6. Unlike J-Crew Management , which is a multi-billion dollar corporation and capable of litigating any case from any venue, the defendant is financially incapable of maintaining a basic living, let alone capable of hiring an attorney or traveling to New Jersey to defend a case against a multi-billion dollar corporation that has a law firm at their disposal.

7. Unlike J-Crew Management, which entered into a fair subcontract agreement with another multi-billion dollar corporation for an agreed services, the settlement agreement with Ross University was not negotiated in good faith and was forced upon the defendant as the defendant had absolutely no bargaining power. Even if Mr. Amini could have obtained 500 attorneys to assist him, the result still would have been the same: RUSM dictated the terms and there was nothing to negotiate.

8. Unlike Atlantic Marine Construction Co., a Virginia corporation, Ross University's main business is located outside of the state of New Jersey. According to Ross University's own published catalog from 2013 (**See Defendant's response brief Exhibit-1**), RUSM's administrative functions in New Jersey are not substantial. The RUSM campus is located on the Caribbean island of Dominica, and the dean's office, which signed the verified complaint, the office of registrar, the office of student services, and the office of clinical rotations are all located in Florida. The President's office is located in Chicago. The majority of the staff for the educational and business operations is located outside of New Jersey. The New Jersey office only handles student finance. Mr. Amini had spent over a year attending RUSM in Dominica. He had spent over six months attending RUSM in Miami, but he had never visited Ross University in New Jersey. Again, the New Jersey office only handles student finance. Almost all of the witnesses for this case live outside of the great state of New Jersey.

9. A forum selection clause may is not enforceable when it results from "fraud, undue influence, or overweening bargaining power," is "unreasonable," or "violates" a "strong public policy." M/S *Bremen v. Zapata Off-Shore Co.*, 407 US 1, 10-15, 92 S. Ct. 1907, 1913-16, 32 L. Ed. 2d 513, 520-23 (1972). "Absent `unconscionability, fraud, or overreaching in the negotiations of the settlement ... no legal or equitable basis exists to reform the parties' property settlement agreement." *N.H. v. H.H.*, 418 N.J. Super. 262, 282 (App. Div. 2011) (quoting *Miller v. Miller*, 160 N.J. 408, 419 (1999)).

10. As stated by the Court, unconscionability can be manifested in two ways. The first is procedural unconscionability, which involves a "variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process...." *Muhammad v. Cnty. Bank of Rehoboth Beach*, 189 N.J. 1, 15 (2006), (quoting *Sitogum Holdings*, Inc., 352 N.J. Super. 555, 564 (Ch. Div. 2002)) cert. denied, 549 US 1338, 127 S. Ct. 2032, 167 L. Ed. 2d 763 (2007). The second is substantive unconscionability, which is determined by applying the four factors identified by the Court in *Rudbart v. North Jersey District Water Supply Commission*, 127 N.J. 344, 356, cert. denied, 506 US 871, 113 S. Ct. 203, 121 L. Ed. 2d 145 (1992). These factors are: "[1] the subject matter of the contract, [2] the parties' relative bargaining positions, [3] the degree of economic compulsion motivating the 'adhering' party, and [4] the public interests affected by the contract."

11. The attorney for the plaintiff falsely claimed that Mr. Amini had three attorneys to assist him with the settlement agreement and therefore the settlement agreement was fair and negotiated in good faith. Even if Mr. Amini could have afforded to have 500 attorneys to assist him, the result still would have been the same: RUSM dictated the terms and there was nothing to negotiate.

12. There is a well-documented history of malicious retaliation by Ross University against Mr. Amini for whistleblowing activities, notwithstanding his excellent performance as a student (See Amini's Motions).

13. Ross University attempted three times to force Mr. Amini into signing the settlement agreement in exchange for basic services that any medical student at the university was entitled to receive from its administration. The first attempt is reflected most notably in the "Extension Agreement" for his USMLE 1 proffered in exchange for his perpetual silence about the school and its business practices (**See Defendant's response brief Exhibit-9**). The second attempt was on June 2011 when Ross University refused to schedule Mr. Amini for a clinical rotation unless he signed the settlement agreement. In both instances Mr. Amini refused to sign. On the third attempt, Ross University threatened to take him before the grievance committee, without granting Mr. Amini due process, unless he signed. Mr. Amini then agreed to sign the agreement and to leave Ross University (**See Defendant's response brief Exhibit-10**), with New Jersey being the forum of choice for Ross University.

14. Mr. Amini had to hire two attorneys because Ross University did not follow its own internal procedures – as outlined in the student handbook – for a fair grievance process. Even after hiring a second attorney, Ross University still wouldn't grant Mr. Amini due process for the grievance hearing. Mr. Amini first hired attorney George Cotz to help him with the grievance process. Attached hereof as **Exhibit-A** are two letters that attorney Cotz wrote to Ross University's attorney, stating that Ross University was not following its own internal guidelines.

15. Even after attorney Cotz's involvement, Ross University wouldn't grant Mr. Amini request for due process as defined in their internal guidelines. Then Mr. Amini asked another attorney, Colleen Kerwick, to get involved. Again Ross University wouldn't grant Mr. Amini due process. This is how attorney kerwick characterized it **(Exhibit-B)**

> "I believe they want to force him to sign a non-disparagement agreement or to expel him. When I suggested to Gyves for giving him a fair hearing he responded: "No, they want him gone!" I am quite certain this is a witchhunt."

16. Therefore, Mr. Amini was not able to adequately defend himself. In fact Ross University was more interested in leveraging the grievance hearing to force Mr. Amini into a settlement agreement rather than granting Mr. Amini due process for the grievance hearing as outlined by Ross University's attorney statement (**Exhibit-C**): "I am advised that it is not too late for your client to withdraw and transfer. If this is of interest to him, let me know and we can pursue it. I am confident Ross will agree to counsel your client re this process and agree to providing a neutral reference to the extent one is needed. We would want a non-disparagement provision (mutual) included in the settlement agreement. We need to move promptly. The hearing is going to proceed on the schedule I have previously indicated to you absent some resolution in the very near future". The settlement agreement was non-negotiable.

17. By refusing to provide the very basic services that any medical student at the university is entitled to receive, Ross University used its bargaining power to force a weaker party, Mr. Amini, to agree to its term, leaving Mr. Amini with no power to negotiate. To Mr. Amini, the non-disparagement agreement was nothing more than a contract of adhesion, a boilerplate contract that Ross University attempted three times to shove down his throat after repeatedly denying him normal student services. Ross University finally succeeded on its third attempt. The terms and conditions of the contract were set by Ross University, and Mr. Amini had little or no ability to negotiate more favorable terms, thus placing him in a "take it or leave it" position.

18. The settlement agreement was not negotiated in good faith and was forced upon Mr.Amini. Ross University attempted three times to force him into signing the settlement agreement in exchange for basic services that any medical student at the university was entitled to receive from its administration. The first attempt was on April 2011 in exchange for a 30-day extension for taking his USMLE exam (**See**

**Defendant's response brief Exhibit-9**). The second attempt was on June 2011 when Ross University refused to schedule Mr. Amini for a rotation unless he signed the settlement agreement. In both instances Mr. Amini refused to sign. On the third attempt, Ross University threatened to take him before the grievance committee, without granting Mr. Amini due process, unless he signed. Mr. Amini then agreed to sign the agreement and to leave Ross.

19. Ross University's choice in the forum selection clause arises from nothing more than forum shopping. They conveniently selected New Jersey where the plaintiff's law firm, Epstein Becker & Green, is located. By their own admission, the plaintiff implies they receive favorable treatment from the Court in New Jersey, as stated by the plaintiff's attorney: "Amini now wishes to avoid this Court because it already has made determinations adverse to him."

20. Ross University and their attorney's choice of New Jersey in the forum clause makes it impossible for students who can't afford to fly across the country to launch a complaint against the plaintiff in New Jersey or have their day in court in case of any dispute in the case. Mr. Amini did request for a change of venue, but the plaintiff's attorney wouldn't agree, essentially holding a "take it or leave it" position.

## THE DEFENDANT ASKING THIS COURT TO DENY THE PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION

21. In the Islamic Republic of Iran where I was raised, reporters and the average citizen are thrown into prison for free speech violations against the government and its various institutions. I left Iran because of these violations. But today in the United States, I am being restrained from expressing my first amendment rights, as guaranteed by our Constitution, against Ross University, a publicly traded company.

22. Ross University is a subsidiary of the publicly traded company, DeVry, Inc. This for-profit institution should not enjoy the privacy of a private citizen, especially when it is under constant scrutiny and investigation by the US media, US lawmakers, and US law enforcement for alleging that the plaintiff is defrauding the U.S taxpayers as clearly stated by Illinois Senator Dick Durbin's statement on his website(**See Defendant's response brief Exhibit-2**):

> "This troubling piece explains how two DeVry-owned foreign medical schools, American University of the Caribbean School of Medicine and **Ross University School of Medicine, prey on students who have been rejected**

> **by traditional US medical schools. These students are lured into massive amounts of debt – much higher than traditional schools – and receive very little to show for it by way of a useful degree.**"

23. Since September 10' 2013, Bloomberg's news agency has twice published an article against the plaintiff, alleging the plaintiff is misleading perspective students and US taxpayers. Against this backdrop, the plaintiff is seeking the assistance of this court to ban the defendant's publication against the plaintiff in order to allow the plaintiff to continue to mislead the public and perspective students. A preliminary injunction is not only prior restraint to this defendant's right to free speech against an unethical corporation, but, more importantly, it demonstrates a public betrayal for allowing the plaintiff to continue to mislead the public.

24. The freedoms of speech and the press are near-sacred rights in our system. Any statute, court order, or administrative policy that restricts their exercise is subject to strict judicial scrutiny and must clear numerous constitutional hurdles. Punishing the defendant for publishing public information would not be in the public's best interest and is highly prejudicial when this Court is already aware that the plaintiff's claims for trademark violations are bogus and have only been used to convince this Court to render a preliminary injunction against this defendant.

25. The entire website is in the record **(See Defendant's response brief Exhibit-7)**. Mr. Amini placed a disclaimer at the top of the first page of the website, disclosing to visitors that the website is not associated with Ross University **(See Defendant's response brief Exhibit Exhibit-8)**. Mr. Amini's website contains no advertising and charges no fees, nor does it seek to sell anything or direct users to websites that do. Consistent with this defendant's First Amendment right of freedom of speech, the website seeks only to inform and allow visitors to express their opinions on a variety of topics. The website does not exist for any commercial purpose, and it has no defamatory statement against anyone.

26. The plaintiff knowingly filed a bogus complaint with this Court for trademark violation in order to ask this Court to render a preliminary injunction to silence the defendant. The plaintiff knew that its claim is defective because the defendant's website consists of protected speech relating to his former university. Not only does the First Amendment protect this defendant's right to publish his views about Ross University on his website, but the trademark law does not prevent consumers and their legal representatives from criticizing corporations or from using a company's trademarked names to identify the corporation whom they are criticizing.

27. The plaintiff knowingly filed a bogus complaint with this Court for trademark violation when in fact they know the website has no commercial purpose, and that the website disclaimer, combined with the content, certainly causes no confusion with the official site of the plaintiff.

28. The plaintiff knowingly filed a bogus complaint with this Court for trademark violation when in fact they knew the defendant is not a competitor of the Movants, and according to the plaintiff's own admission in their verified complaint, "Amini is a disgruntled former RUSM student" and "Amini is an embittered former RUSM student" with no mention of the defendant being a competitor of Ross University or any indication of a commercial motive by the defendant.

29. The plaintiff knowingly filed a bogus complaint with this Court for trademark violation when in fact they knew the websites provided information that is already of public record or available elsewhere on the internet. The websites had links to Senator Durbin's web page, the Bloomberg News, the Tampa Bay Times, a few regulatory agencies, and a link to internal documents that are on public record.

30. Granting preliminary order here disproportionally affects the defendant who is poor and powerless, and for whom non-commercial commentary on his website provides one of the few accessible modes of expression in a nation where the "rich," like the plaintiff in this case, can buy access to newspapers, broadcast time, and billboard space.

31. Knowing that they have the blessing of this Court after this Court granted them the temporary restraining order, the plaintiff and its attorney have released the complaint to over ten Caribbean news agencies that are either controlled by or on the payroll of the plaintiff in order to disparage the defendant. The publication has resulted in the total destruction of this defendant's reputation to the point that the defendant will not ever be able to get a job anywhere in North America. The preliminary order will not only create a substantial "tilt" in the plaintiff's favor, but it will be a carte blanche order to suppress free speech as well as being unconstitutional.

## CONCLUSION

32. Mr. Amini is a former student of Ross University who currently resides in Phoenix, Arizona. He was an outstanding medical student. He earned a 91% USMLE Step I score and maintained a GPA of 3.2 while attending Ross University and received recommendation from his attending physician.

33. Mr. Amini was lured into massive debt by Ross University and has nothing to show for it. He owes US taxpayers $239,000 for attending the university, but is unable to make any payments. He is

unemployed and has less than $700 left in his bank account and is unable to maintain a basic living. He also can't afford an attorney.

34. Mr. Amini resides in Phoenix, Arizona. He has no connection to New Jersey such as owning property, maintaining an office or an agent, or directing any business specifically to New Jersey. Mr. Amini never lived in New Jersey before. Mr. Amini wrote the content of his website outside of New Jersey, and published his website outside of New Jersey. No "substantial part" of those acts is alleged to have occurred in this district, and venue is therefore inappropriate here.

35. The complaint should be dismissed under Rule 12(B)(2) as Mr. Amini is not subject to personal jurisdiction in this Court. Specific personal jurisdiction does not exist over Mr. Amini as he did not purposefully avail himself of the privilege of conducting activities in New Jersey, the plaintiff's claims do not arise out of activities directed at New Jersey, and, therefore, the exercise of jurisdiction would not be constitutionally reasonable. New Jersey lacks general personal jurisdiction because Mr. Amini does not have continuous and systematic contacts with New Jersey.

36. The complaint should be dismissed for improper venue under rule 12(b)(3) as Mr. Amini never lived in New Jersey before. Mr. Amini wrote the content of his website outside of New Jersey, and published his website outside of New Jersey. No "substantial part" of those acts is alleged to have occurred in this district, and venue is therefore inappropriate here.

37. Furthermore the requirement by the court to defend this case in New Jersey would not only be inconvenient, burdensome, and a gross miscarriage of justice, but it would be a depriving Mr. Amini of his day in court.

38. The defendant, Behzad Amini, requests this Court to grant motion to dismiss the Complaint in its entirety under Rules 12(b)(2) and 12(b)(3), or alternatively transfer venue pursuant to 28 USC. § 1404(a) to the United States District Court for the District of Arizona, for the foregoing reasons, based on the above cited authorities. The defendant, Behzad Amini, request this court to deny the plaintiffs' motion for preliminary injunction.

**Dated: 10 of December, 2013.**



Behzad Amini – Pro Se

# EXHIBIT-A

George J. Cotz
Attorney at Law
Member of NY & NJ Bars

180 Franklin Turnpike
Mahwah, New Jersey 07430

Phone 201-512-9961
Fax 201-512-9963
cotzlaw2@aol.com

November 23, 2011

William S. Gyves, Esq
epstein becker
250 Park Avenue
New York, NY 10177

RE: Ben Amini / Ross University

Dear Mr. Gyves;

I have several questions to which I would appreciate answers before proceeding further: is there any document executed by Mr. Amini that purports to bind him to a choice of law clause, choice of forum clause, or to arbitrate claims rather than litigate same in a court?

Going forward, I have many concerns and questions about the process being applied against Mr. Amini, as it does not seem to be consistent with the Handbook or the Catolog. The school's apparent failure to follow its own procedures reinforces Mr. Amini's perception that he is being targeted, and certainly leads me to question the school's good faith.

First, Ross ignored the requirements of §6.5 of the Handbook. The "Complaint" sent to him by Dr. Ippolito on October 21st did not "state the charge", but rather warned him that the Committee "would likely focus on" §6.3(1), leaving me at a loss as to the scope of the charges he must meet. The complaint does contain a summary of the charges, Mr. Amini has not been provided with the names of witnesses and the "supporting materials" gathered between September 27th and October 21st were not provided. Taken as a whole, what was served on Mr. Amini on October 21st cannot be regarded as a complaint within the meaning of the Handbook.

Secondly, there seems to be a conflict between Appendix III, which suggests that the Grievance Committee functions as judge as well as prosecutor, and §6.4, which implies that a

separate, distinct and independent Conduct Board will be convened. How can this be characterized as a fair proceeding if the body that has determined that a prosecution is warranted is also the body assessing guilt? I know that there is a long line of precedent for such a structure, going back to The Inquisition, but it is not a precedent that can bear close scrutiny.

Once Mr. Amini is served with specific charges, rather than a hint about what the committee might focus on; has been presented with a list of witnesses against him; and has been presented with all of the evidence against him, we will be prepared to respond within three class days as required; although we will need sometime for our expert to conclude his review of all the ESI evidence.

In the meantime, perhaps you can have TIG complete its report with the following: name of the author, with his/her CV; the address where Mr. Amini allegedly resided at the relevant times; the name of the program that Mr. Amini allegedly used to disguise his IP address; the factual basis for the author's assertions about Time Warner's practices regarding the assignment of IP addresses; the complete e-mail exemplars used by the expert from Mr. Amini's mailbox, including the complete display of the IP address as he did for the Curry e-mails; the websites that Mr. Amini allegedly owns.

We shall need extensive discovery from Ross, Gupta and Curry before we are able to proceed, and our expert will need access to the individuals' personal computers and telephones, as well as the University's servers. Perhaps we can agree on an expedited schedule for this.

Lastly, demand is hereby made that Ross University and its litigation control group, including Thomas Shepherd, place an immediate Litigation Hold on all computers, servers, back up tapes or disks, PDAs and cellphones covering the period commencing with Mr. Amini's enrollment at Ross and continuing into the future. Failure to do so will expose it, and them, to a possible action for spoliation.

Perhaps we can schedule a telephone conference sometime tomorrow to discuss our next steps.

Very truly yours,

GJC/hs

George J. Cotz
Attorney at Law
Member of NY & NJ Bars

180 Franklin Turnpike
Mahwah, New Jersey 07430

Phone 201-512-9961
Fax 201-512-9963
cotzlaw2@aol.com

October 28, 2011

Dr Scott Ippoloito
Ross University School of Medicine
630 US Highway 1
Suite 300
North Brunswick, NJ 08902

RE: Ben Amini

Dear Dr. Ippolito;

I represent your student, Ben Amini. I write at this time to advise you that I will be representing him in the upcoming disciplinary hearing, should you decide to proceed with it.

There is a well-documented history of antagonism between Mr. Amini and the school, notwithstanding his excellent performance as a student. This is reflected most notably in the "Extension Agreement" for his USMLE 1 proffered in exchange for his perpetual silence about the school and its business practices. Now, the school has delayed advising him of this unfounded complaint until after his rotation at Jamaica Hospital had ended, and he was no longer in a position to readily get statements from witnesses or gather documentary evidence. This complaint was in your possession for over three (3) weeks, and Mr. Amini was only advised about it at 5:30 PM on the Friday when his Jamaica rotation ended. At that point, you certainly knew that potential witnesses had departed to new rotations elsewhere, and would be dispersed and difficult to locate; and as §6.5 only allows students three days to marshall a defense, this left him at a severe disadvantage.

Moreover, you demanded that he answer the "Complaint" within three days without first conducting the pre-Answer conference required by your policy; you have tried to cover

your error by purporting to be reasonable. More importantly, the Complaint did not identify witnesses, nor did it reference or include "the supporting materials gathered during the preliminary investigation" as required by §6.5 of your Handbook.

The fact that you "overlooked" his right to a "pre-Answer conference" with you gives further credibility to our claim that this is a vendetta, with a pre-ordained outcome, rather than a search for truth leading to the imposition of "justice".

In addition, you have not shared the results of TIG's investigation, thereby preventing Mr. Amini from knowing the evidence against him, once again suggesting that this proceeding is rigged.

Lastly, I remind you that Mr. Gupta has a well-known jealousy of my client, that was observed by many at Jamaica Hospital. Had you done a proper investigation, you would have been aware of that. And, had you made timely service of this complaint, he could have assembled witnesses to bear this out.

I urge you to drop this investigation, and relegate Mr. Gupta's file to the trash where it belongs.

Very truly yours,

GJC/hs

# EXHIBIT-B

On Jan 14, 2012, at 1:07 PM, "Kerwick, Colleen" <Ckerwick@dglitigators.com> wrote:

I believe they want to force him to sign a non-disparagement agreement or to expel him. When I suggested to Gyves for giving him a fair hearing he responded: "No, they want him gone!" I am quite certain this is a witchhunt.

Colleen

Colleen Kerwick, Esq. Dombroff Gilmore Jaques & French, 40 Broad Street, Suite 601, New York, NY 10004. Mobile (917) 439-0836 Office (212)742-8450 ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY CONFIDENTIALITY NOTICE: This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments.

# EXHIBIT-C

**From: William S. Gyves [mailto:WGyves@ebglaw.com]**
**Sent: Sat 31/12/2011 8:03 AM**
**To: Kerwick, Colleen**
**Cc: Cotzlaw2@aol.com**
**Subject: RE: FW: FW: Ben Amini/ Ross University Medical School**

As I have said before, I decline to parry with you on the underlying facts and circumstances because I see no upside to that at this juncture and I already have indicated to you Ross's willingness to aggressively defend itself against any legal claims your client might bring. In answer to your question, I am advised that it is not too late for your client to withdraw and transfer. If this is of interest to him, let me know and we can pursue it. I am confident Ross will agree to counsel your client re this process and agree to providing a neutral reference to the extent one is needed. We would want a non-disparagement provision (mutual) included in the settlement agreement. We need to move promptly. The hearing is going to proceed on the schedule I have previously indicated to you absent some resolution in the very near future. Your client needs to schedule the pre-hearing conference if he wishes to do so but his failure to do so will not slow the process. The committee chair awaits word from your client on this issue.

**Please confer with your client and George and advise how you wish to proceed. Thanks.**

William S. Gyves | Bio<http://www.ebglaw.com/bio_WGyves>
(212) 351-3770 (direct) | (973) 639-8284 (alt) | (212) 878-8771 (fax)
WGyves@ebglaw.com

EPSTEIN BECKER GREEN
250 Park Avenue | New York, NY 10177
(212) 351-4500 (main) | www.ebglaw.com<http://www.ebglaw.com/>