**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROSS UNIVERSITY SCHOOL OF MEDICINE and GLOBAL EDUCATION INTERNATIONAL, INC., | Civil Action No.3:13-cv-06121-AET-TJB |
| Plaintiffs, | |
| v. | |
| BEHZAD AMINI, WWW.ROSSU.NET, WWW.ROSSMEDICALSCHOOL.ORG, WWW.ROSSMEDSCHOOL.COM and WWW.JOHNDOEROSSINFRINGINGSITES1-20.DOE | |
| Defendants. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' APPLICATION FOR AN ORDER HOLDING**
**DEFENDANT BEHZAD AMINI IN CIVIL CONTEMPT**

---

EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 642-1900
Facsimile:   (973) 642-0099
Attorneys for Plaintiffs
Ross University School of Medicine and
Global Education International, Inc.

## **TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 2

    A.  Nature of the Action ............................................................................ 2

    B.  The Preliminary Injunction Order ...................................................... 3

    C.  The December 15th Blast E-mail ........................................................ 3

ARGUMENT ................................................................................................................... 8

    AMINI'S KNOWING VIOLATION OF THE PRELIMINARY
    INJUNCTION WARRANTS A FINDING OF CIVIL CONTEMPT
    AND THE IMPOSITION OF SANCTIONS ................................................ 8

CONCLUSION ................................................................................................................ 10

FIRM:24324255v3

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

Calvin Klein Co. v. Fashion Industry, Inc.,
    1982 U.S. Dist. LEXIS 17665 (D.N.J. Jan. 28, 1982) ...............................................8

Faegre & Benson, LLP v. Purdy,
    367 F. Supp. 2d 1238 (D. Minn. 2005) ...................................................................9

Harris v. City of Philadelphia,
    47 F.3d 1311 (3d Cir. 1995)....................................................................................8

In re Arthur Treachers Franchising Litigation,
    689 F.2d 1150 (3d Cir. 1982)..................................................................................8

McDonald's Corp. v. Victory Investments,
    727 F.2d 82 (3d Cir. 1984) .....................................................................................8

Public Interest Research Group of N.J., Inc. v. Circuit Foil USA, Inc.,
    1993 U.S. Dist. LEXIS 4875 (D.N.J. April 13, 1993) .......................................8, 10

Roe v. Operation Rescue,
    919 F.2d 857 (3d Cir. 1990).................................................................................8, 9

Taj Mahal Travel, Inc. v. Delta Airlines Inc.,
    164 F.3d 186 (3d Cir. 1998)....................................................................................9

Tracinda Corp. v. DaimlerChrysler AG,
    502 F.3d 212 (3d Cir. 2007)....................................................................................8

United States v. Spectro Foods Corp.,
    544 F.2d 1175 (3d Cir. 1976)..................................................................................8

FIRM:24324255v3

## PRELIMINARY STATEMENT

Plaintiffs Ross University School of Medicine ("RUSM") and Global Education International, Inc. (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their application for an order holding defendant Behzad Amini in civil contempt for violating the Order of Preliminary Injunction entered on December 9, 2013 ("Preliminary Injunction"), as well as the Temporary Restraining Order dated October 16, 2013 ("TRO") and Order Providing for Continuing Injunction dated October 28, 2013 ("Continuing Injunction"), and for other interim relief.

It took just days for Amini to intentionally trample over the plain and unambiguous terms of the Preliminary Injunction prohibiting him from disparaging RUSM and its administrators.  Indeed, just two days after acknowledging the entry of the Preliminary Injunction, Amini signaled his disdain for the Court's authority by sending a blast email to more than 200 members of the medical education community, government regulators, the media and others accusing Joseph A. Flaherty, M.D., RUSM's Dean and Chancellor, of having engaged in "financial crime" and "being worse than a common criminal."  Amini's bold denigration of the Court's authority and arrogant disregard for his obligation to comply with its orders like any other litigant warrant the immediate imposition of stiff coercive and compensatory sanctions.

Amini in recent weeks has made no secret of his intention to ignore this Court's orders and continue to disparage RUSM and its senior administrators.  No person and no court, he has proclaimed, will prevent him from doing so.  Against the backdrop of Amini's long history of egregious conduct directed at RUSM and his professed commitment to continuing this misconduct, Plaintiffs request that the Court hold Amini in civil contempt for his flagrant flouting of the Preliminary Injunction and impose appropriate sanctions, including the following:

1

- striking with prejudice Amini's pending motion to dismiss and motion to transfer;

- subjecting Amini to a fine of $100.00 per day until he acknowledges in writing to the Court that he understands that (i) the Preliminary Injunction prohibits him from disparaging by any means RUSM and any of its affiliated entities or agents, and (ii) any future violation of the Preliminary Injunction may result in criminal contempt proceedings against him;

- subjecting Amini to a fine of $100.00 per day until he forwards to all recipients of the offending email a statement, in a form acceptable to the Court, that (i) he is aware of no basis for his allegation that Dean Flaherty engaged in criminal conduct, and (ii) the offending email violated the Preliminary Injunction;

- ordering that any future violations of the Preliminary Injunction by Amini and/or those acting in concert with him will subject Amini to a $10,000.00 fine payable to the Court for each such violation; and

- awarding Plaintiffs their reasonable attorneys' fees and costs in bringing this contempt application.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Nature of the Action

This action arises out of Amini's campaign to disparage, discredit and disrupt the operations of RUSM, the Caribbean medical school from which he was permitted to voluntary withdraw last year rather than attempt to defend himself against a serious grievance brought by a fellow student.  In return for being permitted to voluntarily withdraw, Amini executed a formal settlement agreement in which he obligated himself to refrain from disparaging RUSM and members of its administration.  See Verified Complaint, ¶¶ 1-9; 25-36.

Amini's violation of this contractual non-disparagement provision and other wrongful acts prompted Plaintiffs to commence this action on October 16, 2013.  Id., ¶¶ 63-102. Based on compelling evidence of Amini's disparaging and other wrongful conduct, the Court

2

entered the TRO on October 16, 2013 (ECF-Doc. 6) and the Continuing Injunction on October 28, 2013 (ECF-Doc. 11).

**B.    The Preliminary Injunction Order**

On December 9, 2013, the Court entered the Preliminary Injunction (ECF-Doc. 23).  At paragraph 2(a) of the Preliminary Injunction, the Court compelled Amini to, among other things, refrain from:

> Directly or indirectly publishing or disseminating, whether through the Offending, Infringing Sites or other outlets or mediums, any statements that would disparage, reflect negatively upon or otherwise call into question RUSM's business operations, products, services, integrity, reputation or business relationships, or the business operations, products, services, integrity, reputation or business relationships of RUSM and/or any of its parent, subsidiary or any other affiliated entities, and any and all of its or their former and current members, principals, directors, officers, shareholders, employees, agents, attorneys, contractors, representatives, affiliates, predecessors, successors and assigns, including but not limited to any further disparaging communications with representatives of RUSM's affiliated institutions or governmental regulators or any of recipients of the emails identified in the Verified Complaint at paragraphs 65, 68, 78 and 82[.]

Amini had been under this same prohibition since October 16, 2013, as a consequence of the TRO, and October 28, 2013 as a result of the Continuing Injunction.

The Preliminary Injunction was docketed on December 11, 2013.  Amini received notice of it through ECF.  Amini expressly acknowledged that he was aware of the Preliminary Injunction by formally objecting to it in writing on December 13, 2013.  See ECF-Doc. 24.

**C.    The December 15th Blast E-mail**

Just two days after expressly acknowledging the entry of the Preliminary Injunction, Amini promptly proceeded to violate its terms through a blast email to more than 200 recipients in which he accused Dean Flaherty of having engaged in "financial crime" and being

"worse than a common criminal."  <u>See</u> Declaration of William S. Gyves, Esq. ("Gyves Dec.") at

¶¶ 10-11, Ex. A.  Addressing Dean Flaherty and copying members of the RUSM and medical

educational communities, governmental agencies, the media and others, Amini in his December

15, 2013 email ("December 15th Email") wrote:

> Dr. Flaherty,
>
> As a dean of a for-profit medical school with an attrition
> rate of over 20%, you have brought shame and indignity to
> Ross University and the medical community.
>
> Your legacy as the dean of Ross University will be
> remembered as the one who shattered the dreams of many
> and who profited from all the students who had to live with
> massive debt and financial ruin.
>
> I have no doubt that your conscious will suffer in this life
> **for the financial crime you committed** against all those
> students who are now left penniless, including myself.
> There is no justification for what you did, **and you are
> worse than a common criminal**.
>
> Mr. Flaherty, it is time for you to step down.  If you have
> any dignity left, you'll cooperate with Congress and the
> Department of Education's investigations against DeVry,
> Inc. and all those responsible.
>
> How many more students will have to be ruined financially
> before you are fully satisfied?
>
> As history has noted, many of journalists in Iran sent to
> prison for publications against government and its
> institutions.  If I have to be put in prison in United States
> for publishing what Ross University did to me, I'll still
> publish and tell what Ross University did to me.

<u>Id.</u>, Ex. A (emphasis supplied).

The December 15th email was transmitted from the email address

info@stopdevry.com.  Consistent with his course of conduct giving rise to this litigation

(including his maintenance of multiple bogus RUSM websites), Amini is hiding in plain sight

behind this bogus email address and the STOPDEVRY.com domain name to advance his stated objective of undermining RUSM's reputation and disrupting its operations.  This much is clear from an internet domain search conducted through the website dig.Whois.com.au ("WHOIS"). WHOIS is a widely used and highly regarded internet record listing.  Its databases can be searched to identify the registered users or assignees of domain names, IP addresses and the like. In this case, the information obtained from WHOIS reflects who established, maintains and controls the STOPDEVRY.com domain name.  Id., ¶¶ 13-15, Ex. B.

Not surprisingly, WHOIS identifies "Ben Amini" as the registrant of STOPDEVRY.com.  Id., ¶ 15, Ex. B.  Defendant Amini commonly uses the first name "Ben" as opposed to "Behzad."  Id., ¶ 15, Ex. C.  WHOIS also identifies Amini as the administrator of STOPDEVRY.com, as well as its technical contact.  It further lists "Ben Amini's" address as 13835 N. Tatum Boulevard #9-280 in Phoenix -- i.e., the same address Amini has used on his pleadings in this matter.  According to WHOIS, STOPDEVRY.com was created by Amini on November 30, 2013 -- i.e., well after entry of the TRO and Continuing Injunction.  Id., ¶¶ 16-17, Ex. B.

Further, according to WHOIS, STOPDEVRY.com was created on a platform hosted by Hostgator, also doing business as Unified Layer.  Significantly, Hostgator and Unified Layer are specifically identified in paragraph 2 of the Preliminary Injunction as enjoined persons acting in concert with Amini.  Hostgator and Unified Layer are related companies identified through Plaintiffs' due diligence and investigation in this matter as the appropriate third parties to receive notice of the TRO.  They are each "hosting companies," or entities through which persons wanting to have active websites actually maintain websites with content.  Id., ¶¶ 18-20, Ex. B.

5

Unified Layer was first identified through an internet-based search tool that identifies the hosting company associated with a particular website.  Unified Layer was identified as hosting three of Amini's Offending Websites – rossuniversity.info, rossu.net and rossmedicalschool.org -- identified in the TRO.  In response to Plaintiffs' inquiries to Unified Layer, an individual named Ford Merrill confirmed that three of the Offending Websites had been disabled in compliance with the TRO served upon Unified Layer.  He also identified Hostgator as a company related to Unified Layer, adding that Hostgator was the registrar for one of Amini's Offending Websites -- rossuniversity.info -- covered by the TRO.  Following entry of the Preliminary Injunction, Mr. Merrill has cooperated in facilitating the transfer of that domain name to Plaintiffs.  Id., ¶¶ 21-22.

According to WHOIS, the contact email listed for Amini with respect to the STOPDEVRY.com website is green973271@yahoo.com.  Id., ¶ 23, Ex. B.  In the past, Amini has attempted to hide behind the bogus identity of "Jeff Green" in connection with this dispute.  In fact, he provided this same email to a domain name registrar, TUCOWS, Inc., that had disabled one of Amini's Offending Websites in compliance with the TRO.  Id., ¶ 23.  Indeed, on November 19, 2013, Plaintiffs' counsel advised the Court how Amini had held himself out to be "Jeff Green."  Id., ¶ 24, Ex. D.  Plaintiffs' counsel advised the Court:

> Yesterday, we received a troubling email from the Compliance Officer of TUCOWS, Inc. ("TUCOWS") relating to the infringing websites at issue in this litigation. TUCOWS is one of the restrained domain name registrars identified in Your Honor's Order Providing for Continuing Injunction dated October 28, 2013 ("Order").  **TUCOWS informed us that an individual named "Jeff Green" had contacted the company seeking to have the infringing websites unlocked.  The individual identifying himself as "Jeff Green" advised TUCOWS that his telephone number was (602) 980-0900.  Not surprisingly, a review of our own correspondence with Mr. Amini, the docket**

6

> **sheet and defendant's filings reveal that this number is**
> **defendant Behzad Amini's telephone number.**

<u>Id.</u> (emphasis supplied).

       Amini in recent weeks has made clear his intention to continue to disparage RUSM and its administrators regardless of this Court's orders.  In doing so, he has used much of the same rhetoric that is reflected in the December 15th Email.  <u>Id.</u>, ¶ 26.  For example, in an email dated December 3, 2013 and addressed to Plaintiffs' counsel, Amini stated in relevant part that:

> I will fight your client as long as I live.  **No one <u>and</u> <u>no</u>**
> **<u>court</u> can ban my free speech against your client.**
> **Reporters in Iran are put in prison for expressing their**
> **free speech and if I have to be put in prison in United**
> **States for expressing my free speech against your client,**
> **then let it be.**  My story will get all over news; both in US
> and Iran.

<u>Id.</u>, ¶ 27 Ex. E (emphasis supplied).

       The following day, Amini emailed Plaintiffs' counsel yet again, hitting the same themes.  <u>Id.</u>, ¶ 28, Ex. F.  Referring to the pending litigation, Amini wrote:

> In any event, none of [this] matters in a few days and **no**
> **one will be able to yank away my free speech.**

<u>Id.</u>  (emphasis supplied).

FIRM:24324255v3

# ARGUMENT

## AMINI'S KNOWING VIOLATION OF
## THE PRELIMINARY INJUNCTION WARRANTS A FINDING
## OF CIVIL CONTEMPT AND THE IMPOSITION OF SANCTIONS

A court has the inherent power to sanction litigants for refusing to comply with its orders.  See Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir. 2007). Sanctions for civil contempt serve two purposes: to coerce the bad actor into compliance and compensate for the losses caused by his noncompliance.  McDonald's Corp. v. Victory Inves., 727 F.2d 82, 87 (3d Cir. 1984); United States v. Spectro Foods Corp., 544 F.2d 1175, 1182 (3d Cir. 1976).  Courts have broad discretion in determining if a party is in contempt and, if so, in framing the appropriate sanctions to be imposed.  See In re Arthur Treachers Franchising Litig., 689 F.2d 1150, 1158 (3d Cir. 1982); Public Interest Research Group of N.J., Inc. v. Circuit Foil USA, Inc., 1993 U.S. Dist. LEXIS 4875, at *6 (D.N.J. April 13, 1993); Calvin Klein Co. v. Fashion Indus., Inc., 1982 U.S. Dist. LEXIS 17665, at *9 (D.N.J. Jan. 28, 1982).  An award of reasonable attorneys' fees is one appropriate measure of compensation for the losses caused by the noncompliance giving rise to a contempt motion.  Id. At *10.

To establish civil contempt here, Plaintiffs must -- and plainly can -- establish: (i) the existence of a valid court order; (ii) that Amini had knowledge of the order, and (iii) Amini violated the order.  Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3d Cir. 1995); Roe v. Operation Rescue, 919 F.2d 857, 871 (3d Cir. 1990).  The Court entered the Preliminary Injunction on December 9, 2013 and Amini cannot credibly deny that he knew of its entry.  The Preliminary Injunction was posted on the ECF system on December 11, 2013.  Amini received immediate notice of same.  Indeed, Amini acknowledged the entry of the Preliminary Injunction by filing a written objection to it on December 13, 2013.

8

The December 15 Email clearly violates the Preliminary Injunction, as well as the TRO and Continuing Injunction.  All three of those orders specify that Amini shall refrain from publishing or disseminating "any statements that would disparage, reflect negatively upon or otherwise call into question [RUSM or its agents/employees] business operations, products, services, integrity, reputation . . . ."  The December 15th Email does just that when it states that Dean Flaherty has "brought shame and indignity to Ross University and the medical community," accuses him of having committed a "financial crime" and describes him as "worse than a common criminal."  See Gyves Dec., ¶ 12, Ex. A.  It is well settled that accusations of criminality are defamatory as a matter of law.  See Taj Mahal Travel, Inc. v. Delta Airlines Inc., 164 F.3d 186, 189 (3d Cir. 1998)("[f]alse written attributions of criminality are defamatory as a matter of law").

In short, Amini has gone too far and grossly miscalculated the consequences of his irresponsibility and arrogance.  Amini's widely circulated and wholly baseless attack on a professional of Dean Flaherty's stature is nothing short of shameful.  Dean Flaherty is a highly regarded medical educator.  Prior to joining RUSM, he served for more than six years as Dean of the University of Illinois College of Medicine -- the nation's largest medical school.  See Gyves Dec., ¶ 29, Ex. G.  That Dean Flaherty's reputation built over a long career dedicated to medical education could be jeopardized by the groundless flailing of a disgruntled former student is outrageous.  Amini's conduct warrants the imposition of coercive sanctions that will ensure his compliance with the Court's orders during the pendency of this litigation.  Courts routinely issue coercive relief to ensure that contemnors discontinue violating their orders.  See, e.g., Roe, 919 F.2d at 868, 869, 873 (upholding district court's imposition of conditional coercive fine to ensure contemnors' future compliance with injunction); Faegre & Benson, LLP v. Purdy, 367 F. Supp.

2d 1238, 1249-50 (D. Minn. 2005) (contemnor fined $500.00 per day until he ceased to be in violation of court order); Public Interest Research Group, 1993 U.S. Dist. LEXIS 4875, at **8-9 (ordering monitoring to "ensure future compliance" with injunction).

## CONCLUSION

For the reasons set forth above, plaintiffs Ross University School of Medicine and Global Education International, Inc. respectfully request that the Court enter an Order holding defendant Behzad Amini in civil contempt for violating the Preliminary Injunction; impose appropriate sanctions; and award them any other and further relief the Court deems just and proper under the circumstances.

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, New Jersey 07102
Attorneys for Plaintiffs

By:     /s/ James P. Flynn
        James P. Flynn
        William S. Gyves
        Members of the Firm

DATED:  December 18, 2013

FIRM:24324255v3