EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, New Jersey 07102
Telephone:  (973) 642-1900
Facsimile:  (973) 642-0099
Attorneys for Plaintiffs
Ross University School of Medicine and
Global Education International, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ROSS UNIVERSITY SCHOOL OF MEDICINE and GLOBAL EDUCATION INTERNATIONAL, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BEHZAD AMINI, WWW.ROSSU.NET, WWW.ROSSMEDICALSCHOOL.ORG, WWW.ROSSMEDSCHOOL.COM and WWW.JOHNDOEROSSINFRINGINGSITES1-20.DOE<br><br>Defendants. | Civil Action No. 3:13-cv-6121-AET-TJB<br><br><br>**CERTIFICATION OF<br>JAMES P. FLYNN, ESQ.** |

I, JAMES P. FLYNN, pursuant to 28 U.S.C. §1746, hereby certify as follows:

1.      I am an attorney duly licensed to practice in the State of New Jersey and a member of the firm of Epstein Becker & Green, P.C., attorneys for plaintiffs Ross University School of Medicine and Global Education International, Inc. (collectively, "Plaintiffs") in the above-captioned action.

2.      I respectfully submit this declaration in support of Plaintiffs' motion for a default judgment against defendant Behzad Amini ("Amini") in this action.

3.      A default judgment is appropriate on the ground that the Amini was properly served with a Summons and Verified Complaint and his time to answer has expired.

FIRM:24553114v1

A true and correct copy of the Summons and Verified Complaint, with exhibits, is annexed to this Certification as Exhibit A.

4.     On October 16, 2013, Plaintiffs moved by Order to Show Cause with Temporary Restraints seeking to enjoin Amini from, among other things, the use and operation of certain websites whose content violated a valid and enforceable settlement agreement and whose domain names infringed upon Plaintiffs trademark rights. The Court entered the Order and set a preliminary injunction hearing for October 28, 2013. (ECF No. 6).

5.     On October 16, 2013, I caused a true and correct copy of the following documents to be served via email upon Amini at bccpda@yahoo.com: (1) Order to Show Cause with Temporary Restraints; (2) Summons and Verified Complaint; (3) Exhibits to Verified Complaint; (4) Brief in Support of Request for Injunctive Relief (5) Civil Cover Sheet; (6) Rule 7.1 Disclosure Statement.  Service of these documents was effectuated in accordance with paragraph 9 of the Order to Show Cause with Temporary Restraints stating that "service by electronic means is deemed adequate and sufficient." (ECF Nos. 6-7).

6.     On the evening of October 16, 2013 Amini replied to my email stating, among other things, "you will have my motions before the hearing via email" thus indicating that he received the documents identified in paragraph 5.  A true and correct copy of Amini's October 16 email is annexed to this Certification as Exhibit B.

7.     In addition, on October 17, 2003, I provided Amini with the United States District Court, District of New Jersey Procedural Guide for Pro Se Litigants as well as instructions on how to access the District Court's website and the location of various forms.

8.     On October 26, 2013, I received an email from Amini attaching a copy of an unsigned document he entitled "Answer to the Verified Complaint."  This unsigned Answer

2

was never filed on ECF.  Further, it is my understanding based on a later conversation with Amini, that this unsigned Answer was never submitted to the Court.  Rather, Amini indicated that he wished to file motions to dismiss or transfer in lieu of filing an answer and that he wished to revise the Answer he had drafted.

9.      On October 28, 2013, Amini appeared telephonically at the preliminary injunction hearing.  At said hearing, the Court entered an Order extending the temporary restraints previously imposed against Amini. (ECF No. 11).

10.     On October 29, 2013, I received an email from Amini requesting that I stipulate that he be allowed to file his answer "after the motions are heard."  I informed Amini in writing that if his motions were timely filed, his time to answer the Verified Complaint would be tolled until 14 days after the Court decided those motions.  A true and correct copy of Amini's October 29 email and my response is annexed to this Certification as Exhibit C.

11.     On November 1 2013, Amini filed a Motion to Dismiss the Verified Complaint as well as a Motion to Transfer Venue. (ECF Nos. 13-14).

12.     On December 11, 2013, the Court entered an Order granting Plaintiffs' application for a Preliminary Injunction. (ECF No. 23).

13.     On January 2, 2014, the Court entered an Order denying Amini's Motion to Dismiss the Verified Complaint and Motion to Transfer Venue. (ECF No. 29).

14.     Accordingly, Amini's last day to answer the Verified Complaint was, as I had earlier informed him in writing, due 14 days later, or January 16, 2013.

15.     Amini has failed to answer the Verified Complaint.

16.     Further, it appears that Amini has no inclination to further defend against this lawsuit. On December 19, 2013, I received an email from Amini stating that he was leaving

3

the country and "would not be able to participate in these proceedings anymore due to lack of resources and not being able to represent myself from a foreign jurisdiction." A true and correct copy of Amini's December 19 email is annexed to this Certification as Exhibit D.

17.    I therefore respectfully request that the Court direct entry of judgment against Amini and in favor of Plaintiffs in this action and allow us to submit a proposed form of Final Judgment and Permanent Injunction.

18.    I also note for the Court that I intend said form of Final Judgment and Permanent Injunction to make permanent the restraints previously entered, including those in this Court's Order dated January 7, 2014. That Order also required Amini to show cause on February 4, 2014 why he should not be held in contempt for violating this Court's previously entered Orders. Amini has not filed a written response to the order to show cause within the time provided by the Court. As Amini will not likely physically appear for such hearing and has given no indication that he will contest said application or participate in any manner whatsoever, I also ask that my appearance for such hearing be allowed to occur telephonically.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 31, 2014.

_____ s/ James P. Flynn _____
James P. Flynn

FIRM:24553114v1

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ROSS UNIVERSITY SCHOOL OF MEDICINE,**
**ET AL.,**
*Plaintiff*

V.                    **SUMMONS IN A CIVIL CASE**

**BEHZAD AMINI, ET AL.,**
*Defendant*

CASE NUMBER: **3:13−CV−06121−AET−TJB**

TO: *(Name and address of Defendant):*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) −− or 60 days if you are the United States or a United States Agency, or an office or employee of the United States described in Fed. R. civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



**WILLIAM T. WALSH**
_____
CLERK

**JAWEIA CAMPBELL**
ISSUED ON 2013−10−16 09:41:14.0, Clerk
USDC NJD

(By) DEPUTY CLERK

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.

☐ Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify) : _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on   _____        _____
                          Date                                    *Signature of Server*

                                            _____
                                            *Address of Server*

EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 642-1900
Facsimile: (973) 642-0099
Attorneys for Plaintiffs
Ross University School of Medicine and
Global Education International, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSS UNIVERSITY SCHOOL OF MEDICINE and GLOBAL EDUCATION INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BEHZAD AMINI, WWW.ROSSU.NET, WWW.ROSSMEDICALSCHOOL.ORG, WWW.ROSSMEDSCHOOL.COM and WWW.JOHNDOEROSSINFRINGINGSITES1-20.DOE <br><br> Defendants. | Civil Action No. <br><br> **VERIFIED COMPLAINT** |

Plaintiffs Ross University School of Medicine ("RUSM") and Global Education International, Inc. ("Global Education International"), by way of their Verified Complaint against defendants Behzad Amini, www.RossU.net, www.RossMedicalSchool.org, www.RossMedSchool.com and www.JohnDoeRossInfringingSites1-20.doe, state:

### SUMMARY OF ACTION

1.    This action arises out of defendant Behzad Amini's campaign to disparage, discredit and disrupt the operations of RUSM, the Caribbean medical school from which he was permitted to voluntarily withdraw last year as part of the settlement of a grievance filed against him by a fellow RUSM student.

FIRM:23950658v1

2.     In the past, Amini has launched a series of aggressive and very public attacks on RUSM, shamefully accusing members of its senior administration of wrongdoing and making baseless accusations regarding the school's fiscal integrity and the quality of its educational services.  To date, RUSM has ignored Amini's hostile outbursts.

3.     In recent weeks, however, Amini has significantly escalated his efforts to undermine RUSM's educational and financial operations.  In violation of federal and state laws as well as his own contractual obligations, Amini has established a network of as many as <u>twenty</u> bogus websites he admittedly has named and designed to confuse prospective RUSM students, members of the medical education community and the general public and drive them to what they assume are RUSM-controlled and authorized websites.

4.     In fact, those websites are controlled by Amini and serve as the vehicle through which he has continued to disseminate wildly inaccurate allegations regarding RUSM and launch reckless personal attacks on its senior administrators -- going so far as to accuse these highly credentialed medical educators of engaging in criminal conduct.

5.     In this action, plaintiffs seek redress against Amini, www.RossU.net, www.RossMedicalSchool.org, www.RossMedSchool.com and www.JohnDoeRossInfringingSites1-20.doe (the "Offending, Infringing Sites") for Amini's clear violation of plaintiffs' trademark rights under 15 U.S.C. § 1051 <u>et seq</u>.; violation of the Lanham Act, 15 U.S.C. § 1125 <u>et seq</u>.; and violation of New Jersey unfair competition laws.

6.     As to defendants' violation of the federal Anticybersquatting Act and infringement of plaintiffs' trademark rights, Amini admittedly has set up and controls websites named <u>www.RossU.net</u>, <u>www.RossMedicalSchool.org</u> and <u>www.RossMedSchool.com</u>.  <u>See</u> Exhibit A attached hereto.  Each of these websites is a Uniform Resource Locator ("URL") --

2

i.e., web address or Internet address -- infringing upon and, confusingly similar to, plaintiffs' registered trademarks, including but not limited to U.S. Reg. Numbers 3098546, 3043741, and 3237762 ("Ross University Marks").

7.    By way of comparison to Amini's bogus and deceptive websites, RUSM's official websites include www.RossU.edu, www.RossMed.edu and www.RossUniversity.net .

8.    In his drive to pillory RUSM and its administrators, Amini also has trampled over the non-disparagement provision of the settlement agreement through which he was permitted to voluntarily withdraw from RUSM.  See Exhibit B, Section 4.18(a).  Plaintiffs seek redress for this breaching conduct.

9.    Plaintiffs seek preliminary and permanent injunctive relief to enjoin defendants from their ongoing violations of federal and state law; monetary damages; an award of attorneys' fees and costs; and such additional relief as this Court deems appropriate.

## JURISDICTION AND VENUE

10.    As this action arises under federal statute, this Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

11.    Additionally, this Court has jurisdiction over this action under the Lanham Act, codified in relevant part as 15 U.S.C. § 1121(a), 15 U.S.C. § 1114 and 15 U.S.C. § 1125.

12.    This Court has supplementary jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to plaintiffs' federal claims that they form a part of the same case or controversy.

13.    Jurisdiction is also based on 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

FIRM:23950658v1

14.     Venue is appropriate under 28 U.S.C. §1391 and 28 U.S.C. §1395(b).  Moreover, Amini has contractually consented to this Court as an appropriate venue for this dispute.

## PARTIES

### Plaintiffs

15.     RUSM is one of the world's largest providers of medical education.  Its academic campus is located in the Caribbean country of Dominica.  RUSM's administrative offices are located in North Brunswick, New Jersey and in Miramar, Florida.

16.     DeVry Inc. ("DeVry"), through its subsidiary DeVry Medical International, Inc., operates RUSM and its affiliated institution, Ross University School of Veterinary Medicine ("RUSVM").

17.     DeVry, a corporation organized and existing under the laws of Delaware, is a global provider of educational services and one of the largest publicly-held educational organizations in the world.  DeVry's executive offices are located in Downers Grove, Illinois.

18.     Global Education International, a corporation organized and existing under the laws of Barbados, is the registered owner of the Ross University Marks licensed exclusively for use in promoting RUSM and RUSVM.

19.     DeVry is Global Education International's ultimate corporate parent.

### Defendants

20.     Amini, whose last known residential address is 1385 North Tatum Boulevard, #9-280, Phoenix, Arizona, is an embittered former RUSM student.  In 2012, Amini entered into a settlement agreement that allowed him to voluntarily withdraw from RUSM rather than face a grievance proceeding triggered by a complaint filed against him by a fellow student.

4

21.     Amini is also the admitted owner and person in control over www.RossU.net, as well as approximately 20 other websites incorporating domain name elements confusingly similar to the Ross University Marks, including the bogus www.RossMedicalSchool.org, and www.RossMedSchool.com.  See Exhibit A.

22.     Defendants www.RossU.net, www.RossMedicalSchool.org, www.RossMedSchool.com and www.JohnDoeRossInfringingSites1-20.doe are websites incorporating domain name elements confusingly similar to the Ross University Marks.  They are websites over which *in rem* jurisdiction exists.  See Exhibit C.

23.     Defendants www.RossU.net, www.RossMedicalSchool.org, and www.RossMedSchool.com are operating websites that Amini has identified in correspondence and admittedly controls.

24.     Defendants www.JohnDoeRossInfringingSites1-20.doe are fictitiously named defendants representing the additional websites that Amini has referenced, but not specifically identified, in recent correspondence.

## FACTS COMMON TO ALL COUNTS

### The Settlement Agreement

25.     Amini commenced his studies at RUSM in or about January 2009.

26.     On or about September 21, 2011, an RUSM student filed an internal grievance against Amini.

27.     RUSM's Grievance Committee was scheduled to hear the complaint against Amini on February 11, 2012.

28.     On February 10, 2012, RUSM and Amini entered into a Settlement Agreement with Mutual Releases ("Settlement Agreement").  See Exhibit B.  The complaining student also

5

was a party to the Settlement Agreement, as was a witness who was scheduled to testify against Amini at the grievance hearing.

29.     As part of the Settlement Agreement, the complaining student withdrew his grievance and the scheduled grievance hearing was cancelled.

30.     Pursuant to Section 2.1 of the Settlement Agreement, Amini was permitted to "voluntarily and irrevocably withdraw as a student of RUSM." The settling parties agreed that Amini's withdrawal "shall be deemed to have been effected for personal reasons[.]"

31.     In Section 4.18 of the Settlement Agreement, Amini agreed to refrain from disparaging RUSM.  Specifically, Section 4.18(a) provides:

> Amini shall not directly or indirectly say, write or do anything that would disparage, reflect negatively upon or otherwise call into question RUSM's business operations, products, services, integrity, reputation or business relationships, or the business operations, products, services, integrity, reputation or business relationships of any of the releasees identified above in Section 1.1, except as may be required by law.

32.     This non-disparagement provision covered a broad category of individuals and entities affiliated with RUSM and DeVry.  Pursuant to Section 1.1 of the Settlement Agreement, the persons Amini was obligated to refrain from disparaging include "RUSM and/or any of its parent, subsidiary or any other affiliated entities, and any and all of its or their former and current members, principals, directors, officers, shareholders, employees, agents, attorneys, contractors, representatives, affiliates, predecessors, successors and assigns[.]"

33.     At Section 4.18, Amini and the other parties agreed "that any violation by any party of [the non-disparagement provision] shall constitute a material breach of this Settlement Agreement for which the harmed party will have no adequate remedy of law."

FIRM:23950658v1

34.     The parties agreed at Section 4.16 to keep the terms of the Settlement Agreement confidential.  They reserved the right, however, to disclose those terms "as necessary to enforce the terms" of the Settlement Agreement.

35.     The parties further agreed at Section 4.1 that should any of them commence legal proceedings to enforce any of the terms of the Settlement Agreement, "the prevailing party shall be reimbursed for its reasonable attorneys' fees and litigation costs by the breaching party."

36.     Pursuant to Section 4.6, the parties agreed that any such action arising out of a party's non-performance of any obligation under the Settlement Agreement "shall be brought in the Superior Court of New Jersey, Middlesex County or the United States District Court for the District of New Jersey."  Further, the parties "expressly consented to either court's exercise of personal jurisdiction over them with respect to any such action."

**RUSM's Reputation and Goodwill in the
Medical and Educational Communities**

37.     Each year, thousands of qualified aspiring medical students who plan one day to practice in the United States elect to attend a Caribbean medical school to obtain their medical degree.

38.     As one of the premier Caribbean medical schools, RUSM plays a critical role in meeting the strong demand for physicians in the United States that is projected to continue increasing in the future.

39.     RUSM is a fully accredited medical school whose graduates are eligible to practice medicine in all 50 states.

40.     The Commonwealth of Dominica authorizes RUSM to confer upon its graduates the Doctor of Medicine degree.  The school is recognized and accredited by the Dominica Medical Board, the entity authorized to accredit medical programs in Dominica.

7

FIRM:23950658v1

41.   The United States Department of Education's National Committee on Foreign Medical Education and Accreditation has affirmed that Dominica's accreditation standards are comparable to those used to accredit medical schools in the United States.

42.   RUSM has also received four-year accreditation by the Caribbean Accreditation Authority for Education in Medicine and Other Health Professions.  Finally, RUSM is approved by the four states -- New Jersey, New York, California and Florida -- that have processes in place to evaluate and accredit international medical schools.

43.   Because the United States Department of Education has endorsed the Dominica Medical Board's accreditation standards, RUSM students are eligible to participate in the Ford Federal Direct Loan Program, commonly known as Title IV.  This eligibility reflects the federal government's recognition that RUSM is one of a select group of international medical schools that provide a quality medical education and play a critical role in supplying medical professionals qualified to meet the growing demand for physicians in the United States.

44.   RUSM students complete a four-semester course of study (about two years) in Dominica.  Following an additional semester of study either in Dominica, Florida or Michigan, RUSM students who successfully complete Step 1 of the U.S. Medical Licensing Examination continue on to complete the remainder of the curriculum by participating in clinical rotations at one or more of the 49 hospitals and medical centers in the United States, Canada and the United Kingdom affiliated with RUSM for this purpose.

45.   Student performance on the Step 1 exam is universally accepted as a key metric for gauging the quality of a medical school's educational program.  In 2013, RUSM's first-time pass rate on the Step 1 was 96 percent -- on a par with the rate posted by its peers in the United

8

States, and superior to the results achieved by osteopathic schools in the United States and other international schools.

46.     The majority of RUSM's students are residents of the United States or Canada who plan to practice medicine in those countries upon completion of their medical education.

47.     RUSM has graduated more than 10,000 physicians since 1978.  Its alumni currently are practicing in all 50 states.

48.     In the last five years, RUSM graduates obtained more first year residency positions at United States teaching hospitals than graduates from any other medical school in the world -- including those schools located in the United States.  These residency appointments have been in virtually every medical specialty and subspecialty.

**The Ross University Marks**

49.     As part of their commitment to maintaining and protecting RUSM's goodwill in the medical and educational communities and elsewhere, plaintiffs have registered the Ross University Marks and others.

50.     For example, U.S. Reg. Number 3098546 is a word mark "Ross University" covering educational services, namely, conducting continuing education courses of instruction in the fields of medicine and veterinary medicine, and which has a date of first use of 1978.

51.     U.S. Reg. Number 3043741 is a word mark "Ross University" covering printed instructional materials for use, among other things, in the fields of medicine and veterinary medicine and a conducting courses of instruction in the fields of medicine and veterinary medicine, all with dates of first use in 1978.

9

52.   U.S. Reg. Number 3237762 is a mark incorporating a design plus words, letters,

and/or numbers



and covering computer software and prerecorded audio and videotapes and CD-ROMs for use in,

among other things, conducting continuing education instruction for the health care profession in

the fields of medicine and veterinary medicine (with date of first use in 1981); printed

instructional materials for use in conducting courses of instruction for continuing education in

the fields of medicine and veterinary medicine (with date of first use in 1982);  and educational

services, namely, conducting continuing education courses of instruction in the fields of

medicine and veterinary medicine and conducting courses of instruction for the training of

medical and veterinary assistants (with date of first use in 1982).

53.   Plaintiffs have also registered U.S. Reg. Numbers 3994130 and 4262006, a mark

incorporating a design plus words, letters, and/or numbers for DEDITA SCIENTIAE MEDENDI

ROSS UNIVERSITY V, depicted as:



These marks cover career placement services, consulting services and educational services.

10

FIRM:23950658v1

54.     Additionally, plaintiffs have registered numerous domain names incorporating the Ross University Marks, including but not limited to www.RossU.edu, www.RossMed.edu, www.RossUniversity.net, and others.  ("Ross University Websites").

55.     The public readily identifies these trademarks, whether statutory or common law in origin, with RUSM and its educational services.

56.     The Ross University Marks are famous marks that have an inherent or acquired distinctiveness, having been used over a long period of time in association with RUSM's services, advertising, and related matters.

57.     DeVry and its affiliated educational institutions historically have vigorously defended against the infringement of its trademarks, service marks and copyrights.

**The Increasing Importance of Social Media to
RUSM's Educational and Financial Operations**

58.     Internet marketing and RUSM's web presence accessible through the Ross University Websites comprise a vital point of initial and subsequent contact with current and prospective students, current and prospective faculty, alumni and members of the general public.

59.     The importance of Internet marketing to RUSM's educational and financial operations has become increasingly pronounced.  The Internet and social media are the primary vehicle by which RUSM attracts applicants and enrolls the most qualified students each year.

60.     Accordingly, RUSM has shifted substantial funds in its marketing budget from print to digital advertising.

61.     In the last year alone, RUSM has experienced a 71 percent increase in "social referrals."  Social referrals are those instances in which prospective students are introduced to RUSM because YouTube, Facebook or Twitter has directed them eventually to a Ross University Website, and from there to RUSM's admissions staff.

11

FIRM:23950658v1

62.     The emergence of social networking sites such as Facebook, Twitter and YouTube as platforms for both social interaction and the exchange of information make these sites critical to the effective marketing of educational institutions. Indeed, an estimated one-third of adults under the age of thirty gather their news from social networking sites.

### Amini's Illegal Campaign to Undermine RUSM's Operations

#### *Amini's September 21 Emails*

63.     Throughout much of his time at RUSM, Amini maintained a combative and hostile relationship with the school's administration, faculty and students. Amini's hostility toward RUSM has continued following his negotiated withdrawal last year.

64.     Most recently, Amini, in violation of federal and state laws and in plain contravention of his contractual obligations to RUSM, has taken direct aim at the Internet and social networking infrastructure so vital to RUSM's educational and financial operations.

65.     Early in the morning of September 21, 2013, for example, Amini transmitted a highly inflammatory email replete with false allegations regarding RUSM and its administration. See Exhibit D. The email, carrying the subject line "Ross University websites," was addressed to nearly 70 individuals.

66.     The majority of these recipients hold senior positions at affiliated hospitals in the United States at which RUSM students complete their clinical rotations and/or residencies. As Amini knows, based on his experience at RUSM, RUSM's relationships with these affiliated hospitals are absolutely critical to the continued success of the school's clinical program as well as RUSM's financial performance.

67.     In the email, Amini claimed that an article he attached demonstrated that "Ross University had defrauded [the] government, tax-payers, and students." Further, Amini stated, the

12

article reported "that administrators of Ross University, including [Dean] Joseph Flaherty, are [a] bunch of crooks." The attached article supports neither of these allegations.

68.    On the evening of September 21, 2013, Amini sent a second email to the same group of recipients targeted by his initial email earlier in the day. Therein, Amini referenced "corruption by Ross officials." Further, he alleged that "Ross University continues with defrauding tax-payers, students, and the US government."

69.    Amini also stated that "Ross continues to rape-off US taxpayers hundreds of millions of dollars[.]"

70.    In addition, Amini referred to "Ross University getting away with defrauding tax-payers[.]"

71.    Amini further alleged that "Ross University is a corrupt institution who rape off taxpayers and students." RUSM's Dean Flaherty and other administrators, he stated, are a "bunch of crooks."

### *The Bogus YouTube Account*

72.    On or about September 25, 2013, an individual believed to be Amini created a bogus YouTube account, www/youtube.com/user/RossUniversity/videos. Amini then wrongfully downloaded to the account in excess of 160 videos obtained improperly through the internal online platform RUSM uses to permit students to view class lectures and presentations using their web browser.

73.    The videos captured on the bogus YouTube account date back to 2012 or earlier -- i.e., when Amini was still enrolled at RUSM.

74.    The account also reflected a sham "About RossUniversity [sic]" page that disparages the school as "a debt trap." See Exhibit E.

13

75.    Most significantly, the YouTube page shows that this bogus page of disinformation and disparagement already has been accessed and viewed over 4,600 times. See Exhibit E.

76.    Many universities and colleges, including RUSM, maintain official YouTube "channels" which are supervised and monitored by the schools.  Among other things, these channels provide prospective students with informational videos relating to, among other things, admissions criteria and procedures.  Amini's bogus YouTube site strives to confuse and misinform prospective students seeking the official page of RUSM's YouTube channel.

77.    Further, the bogus "About RossUniversity" YouTube page has hyperlinks to the Offending, Infringing Sites, thereby subjecting those persons interested in actual RUSM websites to further confusion as to the source, sponsorship, or affiliation of the websites.

*The September 26 Email*

78.    On the morning of September 26, 2013, Amini sent another email to a raft of some 70 individuals, many of whom -- once again -- are representatives of hospitals in the United States affiliated with RUSM.  See Exhibit A.  Therein, Amini wrote:

> Please Visit my new Website (it is still under development
> as I am adding contents more and more):
> http://www.RossU.net[.]  I am also publishing another 20
> websites against Ross University, including
> http://www.RossMedicalSchool.org,
> http://www.RossMedSchool.com.

79.    Amini's wrongful infringement on Ross University's Marks goes well beyond the creation of a single so-called "gripe site."  Amini has apparently registered at least twenty domain names intended to cause confusion as to the source, sponsorship or affiliation of the websites in question.  These Offending, Infringing sites are in direct competition with the official Ross University Websites.

14

80.    In his email, Amini referred to RUSM administrators as "criminals" and "crooks."

*The September 27 E-mail*

81.    On September 27, 2013, an individual believed to be Amini forwarded from

info@rossu.net the following email to more than 300 recipients:

> As we promised you, we will update you with any updates to our website.  We just added the content relating to administration of Ross University and you can view it at http://rossu.net/Ross-University-administration[.]
>
> It provide[s] you [with] an insight on how this corrupt institution is administered and the corrupt objective
>
> I think someone should file a lawsuit against department of education giving millions of dollars of taxpayers money to these involve
>
> My next project is to call every single medical board and any hospital associated with this organization to informed [sic] about Ross.  And yes, [Dean] Joseph Flaherty is a crook,
>
> Enjoy!

See Exhibit F.

*The October 7 E-mail*

82.    On October 7, 2013 at 4:57 a.m. an individual believed to be Amini forwarded

from info@rossu.net the following email to some 240 recipients:

> Subject: More bad news for Ross University/Devry in coming weeks.
>
> Http://RossU.net is 100% complete. If you have any comment, please email me back.
> More bad news for Ross University/Devry Inc. in coming weeks.
>
> :)

15

See Exhibit G.

83.     The RossU.net is a close, near identical URL to RUSM's own RossU.edu, and could easily be mistaken as one in the same by Internet users searching for information regarding RUSM from a legitimate source.

84.     But at the bogus RossU.net, an Internet user finds a site stating that RUSM operates on a "corrupt business & educational model" and is "masquerading" as an educational institution with "no accountability & no oversight."

85.     Further, the site www.RossU.net advocates for DeVry investors to "dump" their DeVry stock -- presumably in the hope of inflicting grave financial harm on RUSM and other DeVry entities.

86.     The site contains such commentary as "DeVry, AUC and Ross are shady, corrupt institutions, shareholders should dump this stock, congress should reevaluate providing loan funds to these corporations that take advantage of students and do not provide adequate services or even what they advertise."

87.     The site also contains the following commentary:  "I call DeVry, Phoenix and others as dream merchants and should be shut down."

88.     This initial "home" page then links to numerous other pages containing disparaging, untrue and misleading statements concerning RUSM, its administration and its faculty.

89.     The Offending, Infringing Sites are confusingly similar in name to the Ross University Marks and the Ross University Websites.

90.     They infringe, tarnish, damage and diminish the plaintiffs' marks and the associated goodwill.

FIRM:23950658v1

91.     The initial interest and continuing confusion caused by defendants' activity is exacerbated by the fact that prospective students and other parties genuinely interested in obtaining information regarding RUSM will arrive at the Offending, Infringing Sites and, after being confronted with the disinformation and vitriol reflected there, simply cease their inquiry altogether rather than search out the legitimate Ross University Websites.

92.     In collecting and using such registrations confusingly similar to the Ross University Marks, Amini is acting with a bad faith intent to gain advantage from the plaintiffs' marks.

93.     Amini is a person that registers, traffics in, or uses domain names that are identical or confusingly similar to plaintiffs' distinctive marks and that are dilutive of plaintiffs' famous marks.

94.     Amini is a person who uses such domain names to divert customers from the mark owner's online location in a manner that does harm to the goodwill represented by the mark with the intent to tarnish or disparage the mark.

95.     Indeed, Amini is not only appropriating the Ross University Marks in the Offending, Infringing Sites but also is using them to leach off the extensive efforts that RUSM has undertaken since 1978 to give currency to its name and to disseminate its services, which is evidence of bad faith use and registration.

96.     Further, Amini's activities do not amount to any exempted, noncommercial activity since the defendants' actions are designed to harm plaintiffs commercially.

97.     Amini's professed intent is to intercept and divert "perspective [sic] students with an opportunity to have access to actual data in order to make better decisions before falling into a trap!"  See Exhibit H.

17

98.   Deceptive use of another's trademark in a domain name to lure customers away from a trademark owner's website is a kind of consumer confusion.

99.   Amini's use of the Ross University Marks in his URLs is also likely to prevent some Internet users from reaching RUSM's own Internet website.

100.   Persons interested in information regarding RUSM, including prospective students, who mistakenly access Amini's bogus web sites may fail to continue to search for RUSM's own home page, due to confusion, frustration, or the belief that RUSM's legitimate home page does not exist.

101.   Bogus websites masked as, or suggesting a connection by name to, legitimate RUSM sites have the potential to devastate and damage RUSM's goodwill because first impressions are critical when a prospective student is conducting his/her due diligence.

102.   Indeed, Amini himself states that within the next few weeks "many of my "websites against Ross University will hit the web, **in all the top search engines, parked next to Ross University!**," -- i.e., so as to increase the likelihood that they will be mistakenly accessed by those looking for the actual Ross University Websites. See Exhibit D.

103.   A formal demand that Amini cease and desist in the activity described above has been delivered to Amini. See Exhibit I.  Amini has acknowledged receipt of the letter demanding that he cease and desist but he advises that he has no intention of complying.

## COUNT I
### (Breach of Contract)

104.   Plaintiffs incorporate the preceding allegations as though fully stated herein.

105.   The Settlement Agreement was supported by good and valuable consideration and constitutes a valid and binding contract between RUSM and Amini.

18

106.    The non-disparagement provision set forth in Section 4.18 of the Settlement Agreement was a negotiated and material term of that contract.

107.    RUSM has fully performed its obligations to Amini under the Settlement Agreement.

108.    Amini has breached his obligations to RUSM under the Settlement Agreement. Specifically, he has breached Section 4.18 of the Settlement Agreement by disparaging RUSM and certain of its top administrators and publicly and maliciously calling into question RUSM's business operations, services, integrity and reputation.

109.    RUSM has been injured and will continue to be injured as a result of that breaching conduct.

110.    RUSM is entitled to compensatory damages, attorneys' fees and costs, and injunctive relief compelling Amini's compliance with his non-disparagement obligations.

## COUNT II
### (Violation of The Anticybersquatting Act)

111.    Plaintiffs incorporate the preceding allegations as though fully stated herein.

112.    Amini has procured the domain name registration for the Offending, Infringing Sites that contain the famous and distinctive Ross University Marks.

113.    The Offending, Infringing Sites are identical, confusingly similar and dilutive to plaintiffs' distinctive and famous marks.

114.    The Offending, Infringing Sites registered the domain name with the bad faith intention to disparage and tarnish the Ross University Marks.

115.    Such registration violates 15 U.S.C. § 1125(d)(1)(B)(i)(V), which states that bad faith registration is and can be demonstrated where "the person's intent [is] to divert consumers from the mark owner's online location to a site accessible under the domain name that could

19

harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site."

116.    The domain names for the Offending, Infringing Sites are so identical, or confusingly similar, to the Ross University domain names that they create a likelihood of confusion as to the source, sponsorship or affiliation, and the site contains content that tarnishes and disparages RUSM and its good will as embodied in the Ross University Marks.

117.    Amini has no trademark or other intellectual property rights in the Ross University Marks or any of the other domain names owned and used by plaintiffs.

118.    None of the Offending, Infringing Sites contains Amini's legal or common name.

119.    Amini, though admitting in correspondence to ownership and control over the Offending, Infringing Sites (Exhibit A), has hidden his whereabouts and administrative connections to such sites from further investigation through "private customer" domain name registration, as seen at http://www.networksolutions.com/whois/results.jsp?domain=Rossu.net and http://www.networksolutions.com/whois/results.jsp?domain=Rossmedicalschool.org and http://www.networksolutions.com/whois/results.jsp?domain=Rossmedschool.com as opposed to registering the sites under his legal name and legal address to maintain accurate contact information.

120.    Amini has never made prior use of the Offending, Infringing Sites in connection with the bona fide offering of goods or services.

121.    Amini is not making bona fide noncommercial or fair use of the Ross University Marks on the Offending, Infringing Sites.

FIRM:23950658v1

122.    Amini is acting with a bad faith intent to divert customers from the Ross University Websites in a manner that is harming, and will continue to harm, the goodwill represented by the Ross University Marks, with the intent to tarnish, disparage and cause economic harm to the marks.

123.    Amini has admittedly engaged in the registration or acquisition of multiple additional domain names that are identical or confusingly similar to the Ross University Marks.

124.    Plaintiffs are entitled to the transfer of the Offending, Infringing Sites to plaintiffs, as well as preliminary and injunctive relief enjoining Amini from registering, trafficking or using a domain name that is identical, confusingly similar and dilutive of plaintiffs' distinctive and famous marks.

## COUNT III
### (Trademark Dilution in Violation of the Federal Trademark Dilution Act of 1995 And Related State Law)

125.    Plaintiffs incorporate the preceding allegations as though fully stated herein.

126.    Plaintiffs are the owners of distinctive and famous marks, and, after such marks became famous, defendants have improperly utilized the Ross University Marks in a manner that has caused dilution of the distinctive quality of said marks.

127.    Despite their awareness of the existence of plaintiffs' rights with respect to the Ross University Marks, defendants have continued to use the terms RossU and/or Ross University or Ross Med School as a dominant and unmodified component of the domain names for the Offending, Infringing Sites, and therefore have willfully intended to improperly trade on plaintiffs' reputation or to cause dilution of the famous marks.

128.    Amini's conduct violates the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c).

21

FIRM:23950658v1

129.    It also amounts to a violation of NJSA 56:4-1 and the related state common-law claim of unfair competition.

130.    Both the public and plaintiffs have been irreparably harmed as a result of the defendants' wrongful use of Ross University Marks as set forth above.

131.    In addition, plaintiffs have been, and will continue to be, damaged monetarily by the defendants' wrongful conduct, in an amount to be determined at trial.

## COUNT IV
### (Infringement of Registered Trademark in Violation of Section 32(1) of the Lanham Act And Related State Law)

132.    Plaintiffs incorporate the preceding allegations as though fully stated herein.

133.    Amini's use of the terms "Ross University," "RossU" and "RossMed School" infringes plaintiffs' registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

134.    Specifically, plaintiffs own, and the defendants' conduct is infringing upon, the Ross University Marks.

135.    Amini is using the domain names of the Offending, Infringing Sites in connection with the sale, offering for sale, distribution, or advertising of goods or services in interstate commerce.

136.    Such use is likely to cause confusion, or to cause mistake, or to deceive visitors to the Offending, Infringing Sites.

137.    Amini's use of the Ross University Marks constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

138.    Amini's use of the Ross University Marks constitutes a violation of NJSA 56:3-13.20 and the related state common-law claim of unfair competition.

FIRM:23950658v1

139.   Both the public and plaintiffs have been irreparably harmed as a result of Amini's wrongful use of the Ross University Marks as set forth above.

140.   In addition, plaintiffs have been, and will continue to be, damaged monetarily by the defendants' wrongful conduct, in an amount to be determined at trial.

WHEREFORE, plaintiffs demand the following interlocutory and final relief:

(a)   compensatory or statutory damages and punitive damages from Amini;

(b)   an order and judgment declaring that:

(i)   Amini's use of the Ross University Marks infringes on and dilutes Ross University's registered marks in violation of the AntiCybersquatting Act and the Trademark Dilution Act;

(ii)   Amini's use of the Ross University Marks in the URLs for the Offending, Infringing Sites is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Ross University with Amini;

(iii)   Amini's use of the Ross University Marks is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of goods advertised by Amini;

(iv)   Amini's infringement and dilution make this an exceptional case justifying the award of attorneys' fees and costs and/or his breach of the Settlement Agreement justifies his payment of plaintiffs' attorneys' fees and costs incurred in bringing this action;

(c)   an order temporarily, preliminarily and permanently enjoining Amini from breaching his Settlement Agreement with RUSM and otherwise temporarily, preliminarily and permanently enjoining Amini from directly or indirectly publishing or disseminating, whether through the Offending, Infringing Sites or other outlets or mediums, any statements that would disparage, reflect negatively upon or otherwise call into question RUSM's business operations, products, services, integrity, reputation or business relationships, or the business operations, products, services, integrity, reputation or business relationships of RUSM and/or any of its parent, subsidiary or any other affiliated entities, and any and all of its or their former and current members, principals, directors, officers, shareholders, employees, agents, attorneys, contractors, representatives, affiliates, predecessors, successors and assigns, including without limitation any further disparaging communications with representatives of RUSM's

23

affiliated institutions or governmental regulators or any of the recipients of the emails identified above;

(d)   an order temporarily, preliminarily and permanently enjoining Amini from using for any purpose the Ross University Marks or any other name identical or confusingly similar to the Ross University Marks or recognizable portions thereof, whether in any trademark, URL or domain;

(e)   an order temporarily, preliminarily and permanently requiring forfeiture or cancellation of the domain name for the Offending, Infringing Sites or the transfer of the domain names for same to plaintiffs, consistent with 15 U.S.C. § 1125(d)(1)(C); and

(f)   an order and judgment awarding to plaintiffs all other relief to which they are entitled in law or equity.

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, New Jersey 07102
Attorneys for Plaintiffs

By:

James P. Flynn
William S. Gyves
Members of the Firm

DATED:  October 15, 2013

24

FIRM:23950658v1

## CERTIFICATION UNDER LOCAL CIVIL RULE 11.2

This matter in controversy is not the subject of another action pending in any

court, or any other pending arbitration or administrative hearing.

_____
James P. Flynn

DATED:  October 15, 2013

FIRM:23950658v1

## VERIFICATION

I, Joseph A. Flaherty, M.D., hereby verify and certify under 28 U.S.C. § 1746 to the following facts:

1. I am the Dean and Chancellor of the Ross University School of Medicine, the Plaintiff herein.

2. I have read the foregoing Complaint and know the contents thereof, and the same is true to my own knowledge, except to those matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

I certify under penalty of perjury that the foregoing is true and correct.

_____
Joseph A. Flaherty, M.D.

Dated: October 11, 2013

# EXHIBIT B

| From: | Ben Amini <bccpda@yahoo.com> |
|---|---|
| Sent: | Wednesday, October 16, 2013 5:18 PM |
| To: | James P. Flynn |
| Subject: | Re: Ross University School of Medicine et al. v. Behzad Amini et al-- ORDER ENJOINING AND RESTRAINING AMINI ET AL |

Thank you Mr. Flynn for your response. You will have my motions before the hearing via email.

Thanks

# REDACTED

1

# EXHIBIT C

**From:**      Ben Amini <bccpda@Yahoo.com>
**Sent:**      Tuesday, October 29, 2013 5:48 PM
**To:**        James P. Flynn
**Subject:**   Re: Amini

Thank you

Sent from my iPhone

On Oct 29, 2013, at 2:46 PM, "James P. Flynn" <JFlynn@ebglaw.com> wrote:

> Mr. Amini,
>
> So long as your motions are filed with clerk within twenty-one days of October 16 and unless otherwise ordered by the court, your time to answer complaint will be tolled until fourteen days after court decides on those motions.  That occurs by operation of the rules, see Fed R Civ P. 12(a)(4), and my consent is unnecessary.
>
> Jim
>
>
> James P. Flynn  | http://www.ebglaw.com/bio_JFlynn
> t 973.639.8285  | f 973.639.8931
> mailto:JFlynn@ebglaw.com
>
> One Gateway Center | Newark, NJ 07102
> t 973.642.1900 | http://www.ebglaw.com/
>
> Think Green. Please consider the environment before you print this message. Thank you.
> -----Original Message-----
>
> From: Ben Amini [mailto:bccpda@yahoo.com]
> Sent: Tuesday, October 29, 2013 5:06 PM
> To: James P. Flynn
> Subject: Re: Amini
>
> Mr. Flynn,
>
> I am wondering if you would stipulate that I hand in my amended answers after the motions are heard. It is just I am extremely depress and I need some times to get my head around it.
>
> Thanks
>
>
>

# REDACTED

# EXHIBIT D

**REDACTED**

-----Original Message-----
From: Ben Amini [mailto:bccpda@yahoo.com]
Sent: Thursday, December 19, 2013 12:01 PM
To: James P. Flynn
Subject: Re: FW: Ross University v. Amini et al

Mr. Flynn,

Just to inform you that I am leaving United States this Saturday indefinitely. Today would be my last court appearance in this matter as I would not be able to participate in these proceedings anymore due to lack of resources and not being able to represent myself from a foreign jurisdiction.

I would however continue with expressing my free speech and grievance against your client, every single day, as long as I live.

Good luck with your lawsuit.

**REDACTED**