UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSS UNIVERSITY SCHOOL OF MEDICINE, et al.<br><br>Plaintiffs,<br><br>v.<br><br>BEHZAD AMINI, et al.,<br><br>Defendants. | Civil Action No. 13-6121 (AET)<br><br><br>REPORT AND RECOMMENDATION |

This matter has been opened to the Court upon Motion [Docket Entry No. 39] by Plaintiffs Ross University School of Medicine and Global Education International, Inc. ("Plaintiffs" or "RUSM") for Attorneys' Fees and Costs pursuant to Fed. R. Civ. P. ("Rule") 54. [Docket Entry No. 39]. The Motion is unopposed. The Court has fully considered the arguments set forth by Plaintiffs and has considered this matter pursuant to L.Civ.R. 78.1(b).

I.      **Background and Procedural History**

On December 18, 2013, Plaintiffs moved for an Order to Show Cause [Docket Entry No. 25] to hold Defendant Behzad Amini ("Amini") in civil contempt for violating the District Court's Order of Preliminary Injunction entered on December 11, 2013. [Docket Entry No. 23]. The District Court's Order enjoined Defendants from, among other things,

> Directly or indirectly publishing or disseminating, whether through the Offending, Infringing Sites or other outlets or mediums, any statements that would disparage, reflect negatively upon or call into question RUSM's business operations, products, services, integrity, reputation or business relationships, or the business operations, products, services, integrity, reputation or business relationships of RUSM and/or any of its parent, subsidiary or any other affiliated entities, and any all of its or their former and current members, principals, directors, officers, shareholders, employees, agents, attorneys, contractors, representatives, affiliates, predecessors, successors and assigns, including but not limited to any further

> disparaging communications with representatives of RUSM's affiliated institutions or governmental regulators or any of recipients of the emails in the Verified Complaint at paragraphs 65, 68, 78, and 82.

(*Id.* at 2). Two days after the Preliminary Injunction was entered, Amini violated its terms by issuing a "blast email utilizing a bogus email address to more than 200 recipients in which he accused RUSM's Dean and Chancellor, Joseph A. Flaherty, M.D., of having committed 'financial crime' and being 'worse than a common criminal.'" (Pl. Br. in Support of OTSC at 6-7; Docket Entry No. 25). Amini, while objecting to the substance of the Preliminary Injunction, had acknowledged its existence on the same day he disseminated the blast email. (*See* Ltr. From Amini to Hon. Anne E. Thompson of 12/13/2013; Docket Entry No. 24).

Given Amini's violation of the Order of Preliminary Injunction, a contempt hearing was held on February 4, 2014. [Docket Entry No. 33]. Two days later, the District Court entered a Civil Contempt Order against Amini, which, in part, required Amini to pay "Plaintiffs their reasonable attorney's fees and costs in bringing this contempt action." (Civil Contempt Order at 2; Docket Entry No. 34).

Thereafter, on March 10, 2014, the District Court entered a Permanent Injunction against Amini and the other Defendants. As part of the Permanent Injunction, the Court again reiterated the appropriateness of requiring Amini to pay Plaintiffs' fees as outlined in the Contempt Order of February 6, 2014 Order, and also allowed Plaintiffs to "reserve the right to seek reimbursement of fees and costs above and beyond those in the contempt proceedings under fee shifting provisions applicable through statute or contract." (Order of 3/10/2014 at 4; Docket Entry No. 38).

**II.    Argument**

Through the instant motion, in accordance with the District Court's Civil Contempt Order of 2/6/2014 and Order of 3/10/2014, Plaintiffs seek to recoup their attorneys' fees and costs.   In support of their motion, Plaintiffs rely on their letter brief as well as the Declaration of James P. Flynn, Esq. to:   (1) summarize the tasks performed on behalf of Plaintiffs; (2) the hours dedicated to those tasks; (3) the experience of the attorneys who performed said tasks; and (4) the rates at which counsel and their paralegal billed Plaintiffs.   [Docket Entry No. 39].

The breakdown of fees requested is as follows:

- William S. Gyves, Esq.: 18.0 hours at $550.00 per hour or $9,900.00
- James P. Flynn, Esq.: 10.2 hours at $495.00 per hour or $5,049.00
- Robert M. Travisano, Esq.: 12.9 hours at $400.00 per hour or $5,160.00
- Michael T. Keilty, Esq.: 2.8 hours at $290.00 per hour or $812.00
- John M. Cullen (paralegal) : 6.6 hours at $215.00 per hour or $1,419.00
- For a total of $22,340.00.

Counsel then applied a 12.5% or $2792.50 client courtesy fee reduction to the $22,340.00, resulting in the $19,547.50 it seeks through the current motion.   (Flynn Decl. ¶7; Docket Entry No. 39-2).

Plaintiffs state that the hours spent by counsel and the paralegal were related to the following tasks:

- Factual and legal research related to identifying the registered user or assignee of the email accounts in question (13.7 hours)
- Internal and client strategy correspondence (1.7 hours)
- Preparation and revision of documents associated with the Order to Show Cause (25.3 hours)

3

- Correspondence with the Court and Defendants related to the Order to Show Cause (3.2 hours)

- Preparation for oral argument (2.5 hours)

- Correspondence with internet host providers in response to the Court's Contempt Order (0.5 hours)

- Service of Contempt Order on internet host providers and Defendants (6.8 hours).

(*Id*. ¶ 6).   Plaintiffs contend that the hours devoted to each task were calculated by "conservatively reviewing" the time entries billed by counsel and their attorney and listing only those hours exclusively devoted to the contempt proceeding.   (*Id.* ¶ 7).   Plaintiffs argue that their fee application is completely reasonable in light of the investigatory steps Plaintiffs were forced to undertake as a result of Amini's willful disobedience of the District Court's Orders.   (Pl. Ltr. Br. at 2; Docket Entry No. 39-1).   Plaintiffs also argue that Amini's attempt to hide behind phony email addresses and the domain name "STOPDEVRY.com" required Plaintiffs to conduct an extensive review of searchable internet databases in order to identify the true registered user behind the sham accounts.   (*Id.*)   Additionally, Plaintiffs state that they were forced to contact numerous Internet hosting companies who maintain website content like "STOPDEVRY.com."   (*Id*.) Finally, Plaintiffs argue that "the rates and fees charged . . . are completely in line with the standard fees billed to and collected from [the] firm's clients on a routine basis for similar commercial litigation work" and, more importantly, are similar to those charged "by comparable counsel for comparable work" in the New York/New Jersey region.   (*Id*. at 3).   Consequently, Plaintiffs request that their fee application be granted.

**III.   Discussion**

    **A.  Legal Standard**

In determining what, if any, fees should be awarded, the Court is guided by the familiar "lodestar" method, which involves multiplying the hours reasonably expended by an attorney by a reasonable hourly rate.  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).   The party seeking fee reimbursement has the burden to put forth evidence establishing the number of hours worked and the reasonableness of the rate claimed.  *Smith v. Phil. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997).  This means providing sufficient proof "of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make a *prima facie* case."  *Id.*; *see Blum v. Stenson*, 465 U.S. 886, 896, n. 11 (1984).  A reasonable rate is determined by assessing "the experience and skill of the prevailing party's attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).

However, once a party has met its burden to show a reasonable rate, the opposing party "may contest that *prima facie* case only with appropriate record evidence."  *Smith*, 107 F.3d at 225.  The opposing party must make specific objections to the requested fees.  *Rode v. Dellaciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).  "In the absence of such evidence, [a party] must be awarded attorney's fees at [the] requested rate."  *Smith*, 107 F.3d at 225.  All in all, the Court enjoys broad discretion in determining an appropriate hourly rate.  *See Washington v. Philadelphia County Court of Common Please*, 89 F.3d 1031, 1036 (D.N.J. July 9, 1996).

B.  Analysis

The Court finds that Plaintiffs' have satisfied the first half of the lodestar equation. The hourly rates set forth for counsel and their paralegal comports with what has previously been determined to be reasonable in this District. *See e.g., Jama v. Esmor Correctional Servs., Inc.*, 577 F.3d 169, 181 (3d Cir. 2009) (noting that fees ranging from $600 for partner to $205 for first-year associate were reasonable); *In re: Mercedes-Benz Tele Aid Contract Litig.*, Civ. No. 07-2720(DRD), 2011 WL 4020862, at *7 (D.N.J. Sept. 9, 2011) (hourly rates up to $750 for partners and $560 for associates were reasonable); *Illinois Nat'l Ins. Co. v. Wyndham Worldwide Operations*, Civil Action No. 09-1724, 2011 WL 2293334, at *2 (D.N.J. Jun. 7, 2011) (hourly rates up to $540 for partners, $360 for associates, and $162 for paralegals were reasonable); *Aerogroup Internat'l, Inc. v. Ozburn-Hessey Logistics, LLC*, Civil Action No. 08-4217 (SDW)(MCA), 2011 WL 1599618, at *2-3 (D.N.J. Apr. 27, 2011) (hourly rates of up to $625 for partners, $340 for associates, and $160 for para-professionals are within arena of reasonable rates). While the paralegal rate Plaintiffs list is on the upper end of the spectrum, it is not so far outside the range of previous awards for the Court to find that it constitutes an unreasonable rate. This is especially true when it has gone uncontested by Amini. Thus, the hourly rates set forth by Plaintiffs will be applied in calculating the lodestar rate.

The Court thus turns its analysis to the actual time billed; here, 50.5 hours of attorney and/or paralegal work.[1] The Court again notes that the instant fee petition is unopposed. As

---

[1] The Court notes that the hours listed under "services provided" do not match those under "fees sought." (Flynn Decl. ¶¶6-7). Instead, the total number of hours listed in the "services provided" paragraph amounts to 53.7 hours, while the hours listed under the "fees sought" paragraph, which specifically outlines the hours worked by each attorney and paralegal, total 50.5. The Court believes that the former number simply involves a typo, as the latter represents the more precise of the two having been generated through a detailed breakdown of the work

stated above, generally, unopposed petitions that reasonably articulate what hours are sought should be granted as a matter of course.  *See Smith*, 107 F.3d at 225.

The Court finds that the time entries included with Plaintiffs' motion are reasonable. The hours associated with each task are consistent with the work necessary to identify and contact the relevant internet hosting companies, conduct the research and analysis necessary to draft the Oder to Show Cause motion, prepare for the Order to Show Cause hearing, and relay the outcome of the Order to Show Cause hearing to the relevant internet hosting companies. Indeed, in this case it appears that extensive detective legwork was required to identify all of the pertinent internet target sites and hosting companies and, if anything, the total fees requested ultimately appear to be conservative.  As such, the Court is satisfied that the time spent by counsel and their paralegal is appropriate for the tasks performed.

Consequently, the Court recommends that Plaintiffs' Motion for Attorneys' Fees and Costs be granted and that the Court award the requested $19,547.50 in attorneys' fees.

## IV. Conclusion

For the reasons stated above, and for good cause shown,

**IT IS** on this 7th day of October, 2014,

**RECOMMENDED** that Plaintiffs' Motion for Attorneys' Fees and Costs be GRANTED; and it is further

---

performed by each individual involved in this case.  Moreover, the latter number accords with the total figure requested by Plaintiffs through their fee petition, $19,547.50, when each individual's time is multiplied by his billing rate, totaled and then the 12.5% fee reduction is applied.

**ORDERED** that the Clerk of the Court terminate this Motion [Docket Entry No. 39], pending the District Court's acceptance, rejection or modification of the instant Report and Recommendation; and it is further

**ORDERED** that the Clerk of the Court activate the instant Report and Recommendation so as to indicate that it requires further action by the District Court.

                 s/Tonianne J. Bongiovanni
                 **HONORABLE TONIANNE J. BONGIOVANNI**
                 **UNITED STATES MAGISTRATE JUDGE**